No. 46,579

STATE OF KANSAS, *Appellee,* v. WILLIAM RAY OWENS, and DONALD RAY CARLISLE, *Appellants.*

(504 P. 2d 249)

Opinion filed December 9, 1972.

*Russell Shultz,* of Wichita, argued the cause, and *Leonard F. Watkins,* of El Dorado, was with him on the brief for the appellants.

*David P. Calvert,* deputy county attorney, argued the cause, and *Vern Miller,* attorney general, *Keith Sanborn,* county attorney, and *Ted L. Peters,* deputy county attorney, were on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: William Ray Owens and Donald Ray Carlisle were jointly charged with and tried for the offense of taking indecent liberties with a child (K. S. A. 1971 Supp. 21-3503). A jury found them guilty, they were sentenced and they now appeal.

Certain background developed by prosecution evidence should be briefly stated for an understanding of some of the rulings now asserted as error.

On June 14, 1971, the victim of the alleged offenses, a fifteen year old unmarried female, was at a food service stand in Derby, Kansas. She, along with two girl friends, had, a few minutes earlier, taken a ride around Derby with appellants in the latters' automobile. Appellants, eighteen years of age, told the victim they were going to see another young man and that she was welcome to accompany them, which she agreed to do. Instead of going to the place stated, appellants immediately drove to the Derby airport where, in a wheat field, the alleged offenses occurred.

The victim testified in substance to the following: Upon arrival at the airport appellant Owens forcibly removed her from the automobile, forced her to the ground and removed her shorts and underpants; he demanded she remove her blouse and bra; she struggled with him and managed to escape; Carlisle pursued and caught her; he told her he would protect her and she should just pretend when he laid on top of her; Carlisle first, and then Owens, each had sexual intercourse with her; they told her not to say anything as it would only hurt her reputation; they later drove her back to Derby and released her near where some friends of hers were walking; she told one of these girls that Owens and Carlisle had raped her.

The parents of the victim were notified and they in turn called the police. Other evidence will be related in connection with the points raised.

Appellants' first specification of error is that the court improperly allowed the prosecution witnesses to remain in the courtroom during the presentation of all the evidence despite their twice-repeated request to separate or exclude them. In *State v. Guffey,* 205 Kan. 9, 468 P. 2d 254, we dealt with the same complaint. There our review of precedent on the subject led us to conclude that exclusion or sequestration of the witnesses is not a matter of right but lies in the sound discretion of the trial court. We did state, however, that:

". . . [O]n proper application, timely made, exclusion of witnesses is generally allowed and we believe it to be the better practice." (p. 16.)

In *Guffy* we examined the record and found no abuse of discretion in the trial court's refusal to apply the rule. Subsequently, in *State v. Theus,* 207 Kan. 571, 485 P. 2d 1327, we restated the rule thus:

"Whether to exclude prospective witnesses from the courtroom prior to their testimony, and whether to make exceptions, is within the judicial discretion of a trial court in the absence of a showing of prejudice." (Syl. ¶ 4.)

In the case at bar the record reveals that in addition to the victim the prosecution produced as witnesses a police laboratory investigator and the three girl friends to whom the victim complained immediately upon her release by appellants (there could have been other prosecution evidence not included in the record here in asmuch as insufficiency of evidence is not asserted upon appeal). We have reviewed the record testimony and will allude later to that of the three girls. The elements of the offense charged were simple—the prosecution was required only to prove that appellants

had sexual intercourse with a child under the age of sixteen years who was not a spouse to either or that they touched her person with intent to arouse or satisfy the sexual desires of each. Our review convinces us that the failure to sequester the witnesses did not in anywise result in prejudice to the appellants.

Appellants complain that evidence respecting their character was impermissibly received at a time when they had not placed their character in issue. During the prosecution's case in chief one of the three girl friends testified as to her observations after appellants had released the victim from their car. She testified that upon seeing the appellants she and the other girls had run. The state then inquired why they had run and the following colloquy occurred:

"A. We had heard. . . .
"MR. APPELING: I would object to what they had heard.
"THE COURT: The objection is overruled.
"Q. You may answer.
"A. We had heard that Owens and Carlisle weren't good guys to be around with. We didn't want to associate with them.
"Q. Can you describe to the jury . . .
"THE COURT: The objection must now be sustained."

Appellants did not thereafter request the court to strike the answer from the record or to admonish the jury to disregard it, although the court might well have *sua sponte* taken this action. The general instructions given to the jury are not shown in the record. They may well have included the usual admonition that the jury should consider only the testimony admitted into evidence (see PIK § 51.04, Criminal). Be that as it may, we do not believe prejudicial error occurred in the incident. Nothing suggests bad faith on the part of the prosecution in making the inquiry and at the time of the objection it was not apparent that hearsay testimony was being exclusively called for. When it developed that hearsay was being elicited the trial judge acted promptly in reversing his ruling.

Appellants further assert the testimony of the three girl friends was erroneously admitted because it was hearsay. One of the girls testified that upon release from appellants' automobile the victim was scared, she had blood on her legs, she was crying, she didn't know what to do and wanted help and she was afraid of pregnancy; further that she said she had been raped, it hurt and appellants had told her she'd be ruined if she talked about the occurrence. Another girl friend testified she saw the victim crying and

calling for help, that she had dirt and scratches on her legs and she said respecting appellants "they did it to me." The third girl testified she saw the victim running and crying upon her release from appellants' car and that she said, "They did it to me." In response to a question as to whether the victim explained, the witness replied, "They raped her"; later she testified that rape was what she determined the victim had meant.

The trial court overruled appellants' objections to the foregoing testimony on the ground that any hearsay statements contained therein fell within the exception mentioned in K. S. A. 60-460(*a*) which provides:

"Hearsay evidence excluded, exceptions. Evidence of a statement which is made other than by a witness while testifying at the hearing offered to prove the truth of the matter stated is hearsay evidence and inadmissible except:

"(*a*) *Previous statements of persons present.* A statement previously made by a person who is present at the hearing and available for cross-examination with respect to the statement and its subject matter, provided the statement would be admissible if made by declarant while testifying as a witness: . . ."

We think the trial court correctly admitted the challenged testimony (see *State v. Jones,* 204 Kan. 719, 466 P. 2d 283). Beyond this exception, spontaneous statements so closely connected with the time and place of the occurrence as to be a part of the *res gestae* have always been considered exceptions to the hearsay rule, particularly in cases of sexual assault (see, *e. g., State v. Langston,* 106 Kan. 672, 189 Pac. 153). This further exception is now embodied in K. S. A. 60-460(*d*) which provides:

"(*d*) *Contemporaneous statements and statements admissible on ground of necessity generally.* A statement (1) which the judge finds was made while the declarant was perceiving the event or condition which the statement narrates, describes or explains, or (2) which the judge finds was made while the declarant was under the stress of a nervous excitement caused by such perception, or (3) if the declarant is unavailable as a witness, a statement narrating, describing or explaining an event or condition which the judge finds was made by the declarant at a time when the matter had been recently perceived by him and while his recollection was clear, and was made in good faith prior to the commencement of the action and with no incentive to falsify or to distort: . . ."

Clearly the statements made by the victim were also admissible under exception (*d*).

Appellants further complain the trial court erroneously permitted the third girl friend to express a conclusion when she testified she determined that rape was meant when the victim exclaimed, "They

did it to me". We see no prejudice in the incident. Under both K. S. A. 60-419 and 60-456(*a*) a trial judge is vested with wide discretion in determining whether a witness has the prerequisite knowledge and experience to express an opinion. The opinion here challenged was one which could rationally have been inferred by the witness based upon her perception and experience.

Appellants contend that insufficient foundation was shown to permit the reception into evidence over their objection of certain prosecution exhibits. These exhibits consisted of four articles of the victim's clothing, three photographs of her body taken at a hospital shortly after the incident, four photographs of the wheat field showing mashed-down grain with red stains, and a container of grass bearing a red substance taken from the scene the next morning. The complaint is devoid of merit. Suffice it to say ample foundation for the admission of each exhibit was supplied by the testimony either of the victim or a police laboratory investigator, who was also a photographer, and in some instances by the testimony of both.

Finally, appellants contend that in the sentencing process the trial judge abdicated his statutory responsibility in that he refused to consider probation or any subsequent modification of sentence which might be recommended either by the state reception and diagnostic center or by the state board of probation and parole.

The journal entry filed in the case first recited the facts of appellants' conviction and their committal to the custody of the state director of penal institutions for imprisonment for a period of not less than one year nor more than twenty years. It then stated:

"It Was the Order of the Court that the Sheriff of Sedgwick County, Kansas, shall transport the defendants to the Kansas State Reception and Diagnostic Center in Topeka for examination and for the recommendation of said Diagnostic Center as to the advisability of probation or parole for said defendants. It was also ordered that the defendants be not returned to this court.

"It Was Then By the Court Ordered that if said Diagnostic Center should, by its report, recommend probation or parole, then the defendants, together with said Diagnostic Center's report, shall be referred to the State Board of Probation and Parole which shall promptly determine whether the defendants are to be placed on probation or parole.

"It Was By the Court Further Ordered that if said Board of Probation and Parole shall decide in favor of probation or parole, then, in that event, the defendants shall be placed on probation or parole by said Board under supervision of the State Director of Probation and Parole, as provided by law.

"It Was By the Court Further Ordered that if said Diagnostic Center

should not recommend probation and parole, or if said Board of Probation and Parole should deny probation or parole to defendants, then, in that event, the defendants shall be committed to the State Director of Penal Institutions for the serving of said sentences as required by law."

Thereafter the trial judge addressed the following letter to the state board of probation and parole:

"November 11, 1971

"Honorable Alonzo E. Dempsey
"Kansas Board of Probation and Parole
"State Office Building
"Topeka, Kansas 66612
"Mr. Dempsey:

I appreciate your letter referring to my odd journal entry. As you may have guessed, this was part of my effort to place probation where it belongs. After watching and hearing district judges on the subject of probation for these twenty years, I am concluding that probation is not a proper function for the courts. Judges are not trained to apply social therapy to abnormal minds nor are many of them interested in doing so; hence, it is my view that they also are not very successful at it.

"I was not certain what your attitude would be concerning your authority in the field of probation and parole prior to the serving of a minimum term. I thought the law was probably against it, but I hoped at the same time that you might find a way through administrative procedures and such.

"It seems that my only hope now is to hope that you and the members of your Board would use your good influence with the Legislature to place the granting of probation with you and the Diagnostic Center where I feel it belongs. By working at it, perhaps some day this will happen."

Although the journal entry of judgment does not so recite nor does the record reflect the fact, appellee's brief indicates that appellants did apply to the trial court for probation, which was not granted. Appellee points out in support of the trial court's action that the granting of probation is exclusively a function of the trial court and its decision denying probation is not subject to appellate review, citing *State v. Benson*, 207 Kan. 453, 485 P. 2d 1266.

Appellants respond that the trial court refused to consider the question of probation or modification of sentence but instead attempted to shift that responsibility to an agency not authorized by law initially to so act. Such would seem to be the clear import of the journal entry and the trial court's letter, taking the two together.

The complaint is, not that appellants were denied probation or modification of sentence, but that the trial court refused to consider these matters at all.

Our sentencing article, K. S. A. 1971 Supp. 21-4601, commences with this proviso:

"Construction. This article shall be liberally construed to the end that persons convicted of crime shall be dealt with in accordance with their individual characteristics, circumstances, needs, and potentialities as revealed by case studies; that dangerous offenders shall be correctly treated in custody for long terms as needed; and that other offenders shall be dealt with by probation, suspended sentence, or fine whenever such disposition appears practicable and not detrimental to the needs of public safety and the welfare of the offender, or shall be committed for at least a minimum term within the limits provided by law."

The dispositions which a trial court may make upon conviction of crime are found in K. S. A. 1971 Supp. 21-4603, which in pertinent part provides:

"(1) Whenever any person has been found guilty of a crime upon verdict or plea and a sentence of death is not imposed, the court may adjudge any of the following:

"(a) Commit the defendant to the state director of penal institutions or to jail for the confinement for the term provided by law;

. . . . . . . . . . . . .

"(c) Release the defendant on probation;

"(d) Suspend the imposition of the sentence;

"(e) . . . Any time within one hundred twenty (120) days after a sentence is imposed or within one hundred twenty (120) days after probation has been revoked, the court may modify such sentence or revocation of probation by directing that a less severe penalty be imposed in lieu of that originally adjudged within statutory limits. If an appeal is taken and determined adversely to the defendant, such sentence may be modified within one hundred twenty (120) days after the receipt by the clerk of the district court of the mandate from the supreme court. The court may reduce the minimum term of imprisonment at any time before the expiration thereof when such reduction is recommended by the state board of probation and parole and the court is satisfied that the best interests of the public will not be jeopardized and that the welfare of the prisoner will be served by such reduction. The power here conferred upon the court includes the power to reduce such minimum below the statutory limit on the minimum term prescribed for the crime of which the prisoner has been convicted. The recommendation of the board and the order of reduction shall be made in open court."

Noteworthy is the fact that under this statute the grant of probation may be either with or without imposition of sentence. It is not our prerogative to say when probation is or is not to be granted. As indicated, the legislature has placed that function in the trial court and has provided certain tools to aid in the discharge of that duty. K. S. A. 1971 Supp. 21-4604 authorizes, albeit permissively, the use of presentence investigation and report in determin-

ing disposition. K. S. A. 76, Article 24a, established the state reception and diagnostic center, which has the duty to study offenders and make reports and recommendations as to their disposition, including reports and recommendations to the sentencing courts. The use of any such report and recommendation by the trial court is, of course, integrated with the court's power to modify or reduce sentence pursuant to 21-4603.

Nor would we here attempt to prescribe criteria for the exercise of the probation power. We note, however, that such guidelines have been promulgated by persons engaged in the operation and study of the correctional process. ABA Standards, Sentencing Alternatives and Procedures, Approved Draft, 1968, § 2.2 provides:

"General principle: judicial discretion.

"The sentence imposed in each case should call for the minimum amount of custody or confinement which is consistent with the protection of the public, the gravity of the offense and the rehabilitative needs of the defendant." (p. 14.)

Section 2.3 of the same work provides:

"Sentences not involving confinement.

• • • • • • • • • •

"(c) A sentence not involving confinement is to be preferred to a sentence involving partial or total confinement in the absence of affirmative reasons to the contrary." (pp. 14-15.)

ABA Standards, Probation, Approved Draft, 1970, § 1.3 provides:

"Criteria for granting probation.

"(a) The probation decision should not turn upon generalizations about types of offenses or the existence of a prior criminal record, but should be rooted in the facts and circumstances of each case. The court should consider the nature and circumstances of the crime, the history and character of the offender, and available institutional and community resources. Probation should be the sentence unless the sentencing court finds that:

"(i) confinement is necessary to protect the public from further criminal activity by the offender; or

"(ii) the offender is in need of correctional treatment which can most effectively be provided if he is confined; or

"(iii) it would unduly depreciate the seriousness of the offense if a sentence of probation were imposed." (p. 10.)

We mention these criteria to emphasize the importance of individual treatment for each offender rather than disposition under a blanket credo—that which the legislature appears to have had in mind in its enactment of 21-4601 as the objective of our correctional process.

The sentencing judgment is a judicial function and as such is

unreviewable when within statutory limits and procedural safeguards have been observed (*State v. Benson,* supra). But it is a function which may not be delegated, that is, a trial court may not divest itself of this responsibility. The initial grant or denial of probation or parole under 21-4603 is a part of the sentencing process vested in the trial court and is not to be arbitrarily dispensed with no matter how well-intentioned the motives may be.

Here, the trial court was vested with discretionary authority in adjudging sentence. However, we do not now deal with a question of abuse of that discretion because the court never exercised such discretion. The offended parties are entitled to an exercise of that authority. The court was wrong in its belief on the matter and the sentencing aspect of the judgment must be reversed.

Our disposition is this: That part of the judgment sustaining appellants' convictions is affirmed; the remainder of the judgment committing appellants to the custody of the state director of penal institutions for a period of not less than one year nor more than twenty years, denying probation, forbidding appellants' return to the trial court, referring any recommendation made by the state reception and diagnostic center to the state board of probation and parole and directing the latter to take action, is reversed; the case is remanded to the trial court for disposition in accordance with K. S. A. 1971 Supp. 21-4603 and the views herein expressed; it is further directed that such proceedings shall be conducted by another judge to be selected by the administrative judge of the district court of Sedgwick county.

Judgment affirmed in part and reversed in part and remanded with directions.

APPROVED BY THE COURT.