No. 48,156

STATE OF KANSAS, *Appellee,* v. LEWIS E. GUEBARA, *Appellant.*

(553 P. 2d 296)

Opinion filed July 23, 1976.

*James M. Glover,* of Wichita, argued the cause and was on the brief for the appellant.

*Christopher A. Randall,* assistant district attorney, argued the cause, and *Curt T. Schneider,* attorney general, and *Keith Sanborn,* district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

MILLER, J.: Lewis E. Guebara appeals from his conviction by a jury of felony murder in violation of K. S. A. 21-3401 and unlawful possession of a firearm in violation of K. S. A. 21-4204 (1) (*b*). He was sentenced to concurrent terms of imprisonment for life, and for not less than one nor more than five years.

The principal issue before us is whether the felony murder statute, K. S. A. 21-3401, and the trial court's jury instruction which followed it, deprived the defendant of his defense of self-defense because no independent finding of malice was required.

Lewis E. Guebara served a sentence for voluntary manslaughter in the Kansas State Penitentiary, from which he was released on parole in February, 1973. He took up residence in Wichita. During the forenoon of April 21, 1973, he visited the home of a friend, Luis DeLuna, and without DeLuna's knowledge, took DeLuna's .22 caliber revolver with him when he left the home. He tucked the gun in the waistband of his trousers, under his shirt, and had it

with him during the events which followed. Defendant spent the day and evening drinking beer, either at the home of DeLuna's sister, or at a nearby tavern.

About one o'clock on the morning of April 22, 1973, defendant, Luis DeLuna, and Jimmy DeLuna drove in Jimmy's car to The Waterhole Club. They parked next to an automobile owned by Homer Hernandez (the deceased). They entered the club and remained on the premises until the club closed at three o'clock that morning. Homer and Clara Hernandez were also early morning patrons of the club, as was Clara's brother, Arthur. Arthur was intoxicated and lost consciousness by closing time.

Jimmy and Luis DeLuna, perhaps with the assistance of the defendant, carried the inert Arthur from the club and attempted to put him in a convertible which was parked near the entrance. Clara and Homer attempted to pass by this group on the way to Homer's car. The defendant accused Homer of trying to take the gun which the defendant had tucked in the waistband of his trousers, and angry words were exchanged. Homer and Clara then proceeded toward Homer's car and the defendant and the DeLunas proceeded toward the DeLuna car. The argument between the defendant and Homer continued. The weapon was removed from its place of concealment below the defendant's shirt, and Homer was fatally shot. The bullet entered on the left side of Homer's breast bone, went through his heart and lung, and lodged in his back. He was pronounced dead upon his arrival at the hospital. Expert testimony revealed that although only one shot was fired, one of the bullets remaining in the weapon had been struck by the firing pin, but had failed to fire. Homer had no nitrites on his clothing, and the expert was therefore of the opinion that Homer was at least 3½ feet away from the firearm when it discharged. Homer is described as being about five feet, five inches tall, and weighing about one hundred thirty-five pounds.

The record discloses little evidence as to how the shooting occurred, except the testimony of Clara Hernandez, and it discloses no evidence upon which a claim of self-defense could be based. For this reason we secured and have reviewed the trial transcript.

Clara testified that as she was leaving The Waterhole with Homer, they attempted to pass a group of people, and Homer put his hands on the defendant's waist in order to make room for Clara to pass. The defendant immediately accused Homer of trying to take his gun away from him. Homer denied it. Homer and Clara pro-

ceeded to Homer's car and the defendant followed, still arguing. Homer told the defendant, "If you want to fight, you don't need no gun." Clara was to the side and about midway between the two men, who were about ten feet apart. The defendant suddenly pulled his gun and shot Homer.

Jimmy DeLuna was on the driver's side of his car; defendant, Clara and Homer were on the other side. Homer and the defendant were arguing; Jimmy told them to forget it. While Jimmy's back was turned, he heard a shot. He then saw Homer falling, and defendant backing away with a pistol in his hand. During this time Luis DeLuna was at the back of the car. He was nauseated and was not paying attention to the conversation. Homer and the defendant were arguing but they were not fighting. While Luis had his head down, he heard a shot. He looked up and saw defendant, gun in hand, backing away from Homer, who was going down. Joe Varela was about fifty feet away, entering his car, when he heard a shot. He saw Homer fall, and he saw the DeLuna car, in which defendant was riding, leave. Before Homer died, he told Joe that the defendant shot him.

The defendant testified that while he was helping to put Arthur into the convertible, Homer tried to take his gun away from him. They argued, and Homer struck the defendant on the back of the head with his fist. Jimmy DeLuna stopped them and the defendant and Jimmy then walked over to Jimmy's car. Homer and Clara followed them, and Homer again tried to take the gun away from the defendant. Each of them had a hand on the gun. Homer jerked the gun out and tried to take defendant's hand away from it. At that time the gun went off. The defendant testified that he did not intend to shoot Homer.

Defendant points out that K. S. A. 21-3401 and the felony murder instruction which the court gave do not require the jury to make a specific finding of malice if the jury finds that the killing occurred during the commission of another felony, unlawfully possessing a firearm within five years after a previous felony conviction. Defendant admitted possession of the gun and a prior felony conviction, and raised no defense to them. He contends that his defense was self-defense, which necessarily excludes malice since self-defense implies self-preservation rather than ill will. Because the jury was not required to make a specific finding of malice, the defendant reasons that he was prevented from effectively asserting self-defense.

We agree that malice is an essential element of murder in the first degree, including felony murder. In a prosecution for felony murder, however, the state may show malice, premeditation, and deliberation by showing that the killing took place during the commission of another felony. *State v. Goodseal,* 220 Kan. 487, 553 P. 2d 279; *State v. Bradford,* 219 Kan. 336, 548 P. 2d 812; *State v. Clark,* 204 Kan. 38, 460 P. 2d 586. The other felony must be one inherently or foreseeably dangerous to human life. The unlawful, willful or knowing possession of a revolver by a recently convicted or released felon, with the intent to control the use and management of the weapon, is such a felony. *State v. Goodseal,* supra; *State v. Moffitt,* 199 Kan. 514, 431 P. 2d 879. And, see, *State v. Neal,* 215 Kan. 737, 529 P. 2d 114. We concluded in *Goodseal* that malice is established by proof of the same collateral felony as is here involved. We adhere to that ruling.

We disagree, however, with defendant's contention that the failure to require a specific finding of malice effectively deprived him of the defense of self-defense, for two reasons. First, we turn to the evidence before us. Homer Hernandez was unarmed. He did not threaten to inflict injury upon the defendant. Defendant's own testimony was that the gun fired accidentally as they scuffled for possession of it—not that he shot Homer in order to protect himself from threatened injury. The other witnesses all testified to an exchange of words, an argument, but none reported hearing any threats, nor did the defendant. There is no evidence that the deceased had committed prior acts of violence, that the defendant knew of such acts, or that the defendant believed or had reasonable grounds for believing himself to be in danger of death or great bodily harm at the hands of Homer. There is no evidence as to the relative size or strength of the deceased and the defendant. Defendant does not contend or admit that he shot Homer in self-defense or otherwise; he contends that the weapon accidentally discharged during a struggle for its possession, and while both he and Homer had their hands upon it. We conclude that, viewing the evidence in the light most favorable to the defendant, there is no evidentiary basis for a claim of self-defense.

Second, the trial court instructed on both self-defense and accident, and no objections were made to nor were changes requested in either instruction. Both defenses were thus presented to the jury by the court. The jury was left to weigh the evidence under appro-

priate instructions. It could have found that the defendant acted in self-defense, or that the shooting was accidental. By its verdict the jury rejected both defenses.

We conclude that the defendant was not deprived of the defenses available to him under the evidence; that the jury was properly instructed; and that the defendant was afforded a fair trial.

The judgment is affirmed.

PRAGER, J., dissenting: I respectfully dissent from syllabi two and three and corresponding portions of the opinion for the reasons set forth in the dissenting opinion in *State v. Goodseal*, 220 Kan. 487, 553 P. 2d 279.

FROMME and OWSLEY, JJ., join in the foregoing dissent.