No. 48,278

STATE OF KANSAS, *Appellee,* v. HAZEL L. BIRCH, *Appellant.*

(558 P. 2d 119)

Opinion filed December 11, 1976.

*Russell Shultz,* of Wichita, argued the cause and was on the brief for the appellant.

*Stephen E. Robison,* assistant district attorney, argued the cause, and *Curt T. Schneider,* attorney general, *Keith Sanborn,* district attorney, and *Robert L. Kennedy, Jr.,* assistant district attorney, were on the brief for the appellee.

The opinion of the court was delivered by

FOTH, C.: Hazel Birch appeals from her conviction by a jury of first degree (felony) murder (K. S. A. 21-3401) and of the felonious possession of a firearm (K. S. A. 21-4204). The victim was her husband, Webster Birch. The felony she was committing when the homicide occurred was the firearms offense, *i. e.,* possession of a pistol within five years after having been convicted of the felony of aggravated assault.

On appeal defendant asserts but one claim of error, namely, that the court failed to give an adequate instruction on what constitutes "possession" of a firearm. Since the firearm charge was an integral part of the felony murder charge, if she is correct both convictions must fall. There is no contention that the unlawful possession of a pistol is not such a felony as will support a conviction for felony murder, an issue recently laid to rest in *State v. Goodseal,* 220 Kan. 487, 553 P. 2d 279.

She made no objection to the instructions given, and requested none of her own. Our inquiry, therefore, is limited to determining whether the instructions given were "clearly erroneous." (K. S. A. 22-3414 [3]; *State v. Sully,* 219 Kan. 222, 547 P. 2d 344.)

On the firearms charge the court instructed the jury that the state had to prove, "[t]hat Hazel L. Birch did *wilfully* possess a firearm having a barrel less than 12 inches in length." (Emphasis added.) The court amplified this in its definition instruction, where it told

the jury: "Wilfully means conduct that is purposeful and intentional and not accidental."

The defendant nevertheless contends that the court should have further defined "possession" in terms of an intent to exercise dominion and control, as opposed to an innocent handling. She relies on *State v. Phinis*, 199 Kan. 472, 430 P. 2d 251; *State v. Runnels*, 203 Kan. 513, 456 P. 2d 16; and *State v. Neal*, 215 Kan. 737, 529 P. 2d 114.

In *Neal* the two earlier cases were discussed and then summarized: "When taken together, *Phinis* and *Runnels* fashion the rule that the possession proscribed by the statute is not the innocent handling of the weapon but a willful or knowing possession with the intent to control the use and management thereof." (215 Kan. at 740.) The instructions given conform to this rule, first by positively requiring a "purposeful and intentional" possession; and second, by negativing an "accidental" possession, which we take to encompass an "innocent" handling. We cannot find that the instructions given are clearly erroneous.

Our conclusion is reinforced by a comparison of the facts in this case to those in the cases relied on by the defendant. In *Phinis* the defendant took a revolver from a table and fired it into the floor to frighten an intruder. We held that such a handling of the weapon would support a conviction under an instruction that conviction required an intent to control as opposed to an innocent handling. In *Runnels* the defendant's story was that he had lent his car to his brother and later discovered a gun in it. The court charged the jury that it must find the defendant "did wilfully have or keep a pistol in his possession with the intent to control the use and management thereof." (203 Kan. at 515.) This instruction on intent was held to be sufficient to cover the "innocent handling" concept of *Phinis*. Finally, in *Neal*, we held it was error to refuse a requested instruction defining possession, but there the theory of the defense was that the defendant had been merely a messenger in first procuring the gun and later pawning it for the owner and true possessor.

In each of these cases "innocent handling" of the weapon, without an intent to use it as such, was the theory of the defense. And, as was said in *Neal*, "[a] defendant is entitled to have his theory of the case presented at his trial." (215 Kan. at 740.)

In this case, however, there was no "innocent handling" theory of defense. The defendant apparently did not testify, and there

was nothing in the state's case to indicate such a theory. The evidence showed that the defendant, suspecting her husband of a dalliance with one Joyce Tuggle, drove up and down Broadway in Wichita on the morning of August 17, 1974, looking for her husband's car. At 9:00 a. m. she located it at a motel. She went to the desk clerk, identified herself as Mrs. Birch and asked for a key to Webster Birch's room, saying she had been locked out. She entered the room with the key, breaking a chain night lock from the door jamb.

Joyce Tuggle, who was in bed with Webster Birch, woke to the sound of a shot and found the defendant by the side of the bed, gun in hand. The defendant said "I have shot you," and accused Mrs. Tuggle of trying to take her husband away from her. Mrs. Tuggle discovered she had, indeed, suffered a flesh wound in the thigh. Both women attempted to arouse Birch without success; the bullet which went through Mrs. Tuggle's thigh also penetrated Birch's skull, from which it was later recovered.

The women summoned the management with a request for the police and an ambulance. While waiting Mrs. Tuggle saw defendant unsuccessfully attempt to unload the revolver before dropping it in her purse. Defendant then left the motel and went towards her husband's car. The police found the defendant outside and found the gun in Webster Birch's car with one expended shell in the cylinder. The bullet taken from his skull was identified ballistically as having come from the same gun.

As may be seen, the facts here left no room for an argument that defendant's possession of the pistol was an innocent handling without any intent to control its use and management. Persons who deliberately shoot someone are hardly in a position to argue that they didn't intend to control the use of the gun. That doubtless is why defense counsel requested no instruction which would more pointedly inject these concepts into the court's instructions. Had there been any ambiguity in the defendant's intent with respect to the gun, and had there been a request for a further instruction on that element, one might well have been given in accordance with *Neal*. Under the circumstances, however, the instructions given were not clearly erroneous, and the conviction is affirmed.

APPROVED BY THE COURT.

PRAGER, J., dissenting: I respectfully dissent for the reasons set forth in my dissenting opinion in *State v. Goodseal*, 220 Kan. 487,

553 P. 2d 279. The inherent injustice involved in utilizing unlawful possession of a firearm as the underlying felony in felony murder has manifested itself once again.