No. 48,966

STATE OF KANSAS, *Appellee*, v. RICHARD BRANCH III and EUGENE BUSSEY, *Appellants*.

(573 P.2d 1041)

Opinion filed January 21, 1978.

*Stuart D. Mitchelson,* of Mission, argued the cause and was on the brief for appellant Richard Branch III.

*Robert W. Hedrick,* of Kansas City, argued the cause and was on the brief for appellant Eugene Bussey.

*Richard S. Wetzler,* assistant district attorney, argued the cause, and *Curt T. Schneider,* attorney general, and *Dennis W. Moore,* district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

OWSLEY, J.: Defendants Richard Branch III and Eugene Bussey were convicted by a jury of two counts of aggravated robbery (K.S.A. 21-3427), conspiracy to commit robbery (K.S.A. 21-3302), and felony murder (K.S.A. 21-3401). Defendants appeal from these convictions, raising common issues.

On June 30, 1975, defendant Bussey and two other persons went to an apartment in Lenexa, Kansas. There they met Joel Bruner, a known drug dealer, to discuss the purchase of a quantity of marijuana. Bruner told them that later in the day he would have a supply which he would sell to them. After leaving the apartment the three decided it would be more profitable for them to rob Bruner of his marijuana than to pay for it and they met that evening to formulate a plan. It was then that defendant Branch

joined the group. After the meeting the four drove to another residence and one of the men borrowed a shotgun. They then drove to Bruner's apartment.

Branch and Bussey entered the apartment to conclude the deal with Bruner. Their partner, Byers, remained in the hallway outside the apartment, armed with the shotgun. After five or ten minutes Byers knocked on the door. When Eugene Pearcy, a visitor at the apartment, opened the door Byers forced his way in and announced the holdup. Branch and Bussey stood up and each drew a handgun. Byers went to the rear of the apartment and found Stark Nelson, another resident. At this time the two men in the back room heard a scuffle and a gunshot from the living room. They returned to the living room and saw Bruner lying on the floor.

Apparently, Branch made advances toward Bruner's girlfriend, Jana Cox, while he and Bussey were tying their victims. Bruner took offense to the acts and a struggle ensued. Bussey shot Bruner, resulting in his death.

After all the occupants had been forced to the floor, Branch and Bussey seized the marijuana and robbed Bruner, Nelson, and Pearcy's roommate, Liebert Hudson, of their billfolds. The loot and drugs were later split among the four participants in the robbery.

The first point on appeal concerns the trial court's instruction that the jury must find that "Richard Branch, III and/or Eugene Bussey killed Joel A. Bruner." Under the state's theory of the case the instruction was correct. Although it appears the killing was done by Bussey, the state established a conspiracy to commit robbery and in the execution of the plot Bruner was killed. Each member of the conspiracy was equally responsible for Bruner's death if the murder was committed during the perpetration of the robbery. (*State v. Turner,* 193 Kan. 189, 392 P.2d 863; *State v. Roselli,* 109 Kan. 33, 198 Pac. 195.)

Defendants argue they cannot be found guilty of murder because the killing was accidental. Assuming so, defendants are still guilty of first degree murder. To apply the felony murder rule, it is only necessary to establish that defendants committed a felony inherently dangerous to human life and that the killing took place during the commission of the felony. (*State v. Guebara,* 220 Kan. 520, 523, 553 P.2d 296; *State v. Goodseal,* 220 Kan. 487, 553 P.2d

279.) A requirement of the felony murder rule is the fact the participants in the felony could reasonably foresee or expect that a life might be taken in the perpetration of such felony. If applied to the facts of the present case, defendants are subject to the felony murder rule and it makes no difference that the killing was accidental.

A felon's attempt to commit a robbery sets in motion a chain of events which should cause him to contemplate that a death might occur. This is particularly true of a robber who carries a deadly weapon (as these robbers did) and forces his way into an occupied dwelling. The impulse for an individual to resist the sudden show of force, to defend himself or to come to the aid of a family member or loved one, is a basic human instinct. Under such circumstances every robber who expects human opposition to his quest to steal, as he must when he commits a statutory robbery, is a potential assassin because he knows he may be forced to use his weapon either to carry out his criminal act or to escape without being pursued and captured by his victim. In a felony inherently dangerous to life the intent to accomplish the initial felony is transformed into malice and premeditation upon the death of a human being and the felon is guilty of first degree murder. Despite defendants' argument that the result is harsh, it is one which society imposes upon those who commit such crimes knowing full well the possible tragic results.

This court has upheld convictions of defendants when they did not perpetrate the murder for which they were convicted but participated in the felony used to invoke the felony murder rule. In *State v. Roselli,* supra, the defendant was found guilty of murder in the first degree when the killing was committed by another in the course of a robbery. The court stated:

". . . Robbery is a crime of violence used or threatened. It is a matter of common knowledge, derived from human experience, that a display of personal violence to accomplish robbery normally tends to the taking of life, . . ." (p. 40.)

In *State v. Boone,* 124 Kan. 208, 257 Pac. 739 (burglary), it was said:

". . . The evidence that the companions of the appellant took guns with them tended to prove that they intended to kill if it became necessary in order to accomplish their design or to effect their escape. . . ." (p. 211.)

We conclude that any participant in a life-endangering felony

is guilty of first degree murder when a life is taken in the course of committing or attempting to commit the felony, whether the death was intentional or accidental, or whether the participant directly caused it to occur. (See, *State v. Bey,* 217 Kan. 251, 535 P.2d 881; *State v. Turner,* supra; *State v. Bundy,* 147 Kan. 4, 75 P.2d 236.)

Defendants' third point on appeal concerns their request for lesser included offense instructions of first degree murder. The trial court properly declined to give such instructions. While a trial court is normally required to give a full range of instructions, such a rule does not apply when a murder is committed during the commission of a felony. (*State v. Rueckert,* 221 Kan. 727, 731, 561 P.2d 850; *State v. Goodseal,* supra at 501; *State v. Reed,* 214 Kan. 562, 564, 520 P.2d 1314; *State v. Masqua,* 210 Kan. 419, 425, 502 P.2d 728, cert. denied 411 U.S. 951, 36 L.Ed.2d 413, 93 S.Ct. 1939; *State v. Zimmer,* 198 Kan. 479, 426 P.2d 267, cert. denied 389 U.S. 933, 19 L.Ed.2d 286, 88 S.Ct. 298, *State v. Roselli,* supra at 40.) The only exception to this rule is when the evidence of the underlying felony was weak or inconclusive, but here the evidence of the robbery was overwhelming. (*State v. Rueckert,* supra; *State v. Bradford,* 219 Kan. 336, 548 P.2d 812.)

Finally, defendants contend all the robbery counts except one should have been dismissed. The basis for this contention is defendants' belief that only one robbery was committed. They are mistaken. Since each robbery was committed upon a different person it was necessary to prove different facts for each of the charges; thus, the charges were separate and not duplicitous. (*State v. Watkins,* 219 Kan. 81, 547 P.2d 810; *State v. Jackson,* 218 Kan. 491, 543 P.2d 901.) In *In re Allison,* 13 Colo. 525, 22 Pac. 820 (1889), the Colorado Supreme Court held:

". . . Relator was not tried for robbing the stage; each of the indictments charged him with robbing a different individual passenger upon the stage. And no doubt can be entertained but that these various robberies were distinct offenses, although committed at the same place and in rapid succession. They constituted separate acts; but, even if regarded as a single act, they affected separate objects. And, 'where one unlawful act operates on several objects, there may be several offenses committed, and so several prosecutions for the same criminal transaction, . . .'" (p. 532.)

We find no error and the judgment of the trial court is affirmed.