No. 51,401
No. 51,420

STATE OF KANSAS, *Appellee,* v. CURTIS LEON UNDERWOOD,
*Appellant.*

(615 P.2d 153)

Opinion filed July 18, 1980.

*Russell Shultz,* of Shultz, Fisher, Monnat & Shultz, of Wichita, argued the cause and was on the brief for the appellant.

*Beverly Dempsey,* assistant district attorney, argued the cause, and *Robert T. Stephan,* attorney general, and *Vern Miller,* district attorney, were with her on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: Curtis Leon Underwood appeals from a jury conviction of felony murder (K.S.A. 21-3401). The underlying felony which is being used to classify the homicide as a felony murder is unlawful possession of a firearm as defined in K.S.A. 21-4204(1)(*b*). This forms the basis for appeal No. 51,401 in this court.

In an attempt to erase the underlying or collateral felony the defendant filed two motions in a 1974 case in which he had been convicted of felony theft. He filed one motion to annul this conviction and a second motion to withdraw his plea of nolo contendere. Both motions were overruled. Defendant then perfected an appeal from the order denying these motions. This forms the basis for appeal No. 51,420 in this court.

The two appeals were consolidated and are now before this court for decision. We will consider the appeal in the 1974 case first. On August 2, 1974, when appellant Underwood was eighteen years old, he assisted Gus Hankins, Jr. in stealing a bicycle from the Wichita State University campus. Appellant testified that he was with Hankins and observed Hankins cut a security chain with bolt cutters. Hankins gave him the bolt cutters and rode off on the bicycle. Appellant put the bolt cutters in his pocket. An eyewitness, who later identified both appellant and Hankins, notified the police. The appellant and Hankins were arrested and charged with felony theft. Hankins was arrested in possession of the bicycle. Appellant had the bolt cutters in his pocket when he was arrested. The appellant entered a plea of nolo contendere to the charge of felony theft and was sentenced for a period of from one to ten years. He was placed on probation for a two year period. His probation was terminated when fully served in September, 1976.

The events leading to appellant's conviction on the felony murder charge occurred on October 28, 1978. Appellant and some friends were attending a card party at 2718 East 10th Street, Wichita, Kansas. While appellant was watching the game, one of the players, Earl Brewer, accused him of stealing a bag of marijuana. They exchanged angry words and eventually began fighting in the yard. During this altercation the bag of marijuana dropped to the ground. The fight stopped. A friend of Brewer came from the house carrying a shotgun and handed it to Brewer.

Brewer brandished the shotgun. The appellant and his friends entered their cars to leave. From the car appellant announced that he would return.

The appellant and his friends went to appellant's home where he changed his clothes. The appellant changed from dress clothes and platform shoes to jeans and tennis shoes. Appellant also obtained a .32 caliber pistol. The pistol had recently been purchased by appellant with funds from his live-in girl friend, ostensibly for her protection. Appellant gave the gun to his half-brother, Phil Marzett, for safekeeping before returning to the scene of the fight.

The appellant and his friends returned to the 10th Street address and Brewer was summoned to come outside the house. The fight was resumed. Friends of both men became embroiled in the fighting. One man was stabbed. A friend of Brewer emerged from the house with the shotgun. Brewer and appellant had been fighting on the ground. Brewer stood up and ran toward his friend with the shotgun. The appellant retrieved the pistol from Marzett and shot at Brewer. Four shots were fired by appellant. One bullet struck and killed Brewer. Appellant testified he fired the shots because he saw Brewer reaching for the shotgun; he feared for the safety of his friends and himself.

Shortly after the shooting appellant telephoned the police and arranged to turn himself in. Appellant was charged with the unlawful possession of a firearm and with felony murder. The firearm charge which formed the underlying felony for the felony murder charge was based on the fact that appellant had been convicted of the 1974 bicycle theft and had possession of a firearm.

Appellant filed a motion in the trial court seeking annulment of the 1974 bicycle theft conviction. He argued that his attorney, the prosecutor, and the judge had assured him that the 1974 conviction would be cleared and annulled as soon as he finished serving his two year probationary period. Appellant further contended he entered his plea and testified against Hankins because of this assurance.

After conducting an evidentiary hearing on the motion, the trial court refused to annul the 1974 conviction. The court found that although appellant may have been aware of the possibility of annulment, the sentencing court did not discuss annulment when

the plea was accepted and apparently no one explained that the annulment procedure was not automatic. The trial court, after examining the statutes providing for annulment and for expungement, held the present statutes would not permit the annulment or expungement of appellant's firearm violation in any event.

Appellant then filed the motion to withdraw his nolo contendere plea under K.S.A. 22-3210(7) "to correct manifest injustice." Appellant asserted the plea was entered when he was eighteen years old, that he was not guilty of the charges, and that the plea was inadvertently made on the advice of unqualified counsel. Appellant alleged that neither the prosecutor nor the court complied with their agreements to dismiss the case on completion of probation, that probation was completed in September, 1976, but the case was neither dismissed nor expunged.

The trial court held:

"The defendant has served his period of probation and has been released by the court. The judgment has been completed, the order executed, and the defendant released by the court. Therefore, the court has no jurisdiction to carry out the provisions under K.S.A. 22-3210(7), as requested by the defendant."

We will first consider the question of annulment. The statute in effect at the time of appellant's conviction was K.S.A. 21-4616 and it provided:

"Every defendant who had not attained the age of twenty-one (21) years at the time of the commission of the crime for which he was convicted, and who has served the sentence imposed or who has fulfilled the conditions of his probation or suspension of sentence for the entire period thereof, or who shall have been discharged from probation prior to the termination of the period thereof, may at any time thereafter be permitted by the court to withdraw his plea of guilty and enter a plea of not guilty; or if he has been convicted after a plea of not guilty, the court may set aside the verdict of guilty; and in either case, the court shall thereupon dismiss the complaint, information or indictment against such defendant, who shall thereafter be released from all penalties and disabilities resulting from the crime of which he has been convicted, and he shall in all respects be treated as not having been convicted, except that upon conviction of any subsequent crime such conviction may be considered as a prior conviction in determining the sentence to be imposed. The defendant shall be informed of this privilege when he is placed on probation or suspended sentence.

"In any application for employment, license or other civil right or privilege, or any appearance as a witness, a person whose conviction of crime has been annulled under this statute may state that he has never been convicted of such crime."

This statute states that a defendant may be "permitted" to

withdraw his plea and have the complaint dismissed. The annulment process is referred to as a "privilege." Our former decisions construing this statute never have indicated the annulment process is automatic. In *State v. Miller,* 214 Kan. 538, 544, 520 P.2d 1248 (1974), we distinguished the California "mandatory" annulment provision and the "automatic" Federal Youth Corrections Act provisions for annulment. We described K.S.A. 21-4616 as providing for "permissive" annulment, stating:

"Like the granting of probation the annulment of a conviction is a part of the sentencing process. The sentencing judgment is a judicial function and the granting or denial of probation under 21-4603 is a part of the sentencing process vested in the trial court. (*State v. Owens & Carlisle,* 210 Kan. 628, 504 P.2d 249.) Likewise the granting or denial of an application for annulment of a conviction is a judicial function. Such power contemplates a judicial inquiry and the exercise of judicial discretion in the same way that a court exercises its discretion in the granting of probation, and in deciding whether or not probation should be revoked. The granting or denial of an application for the annulment of a conviction rests within the district court's sound discretion." 214 Kan. at 545.

In *State v. Boone,* 220 Kan. 758, 770, 556 P.2d 864 (1976), we state "[a] person's conviction is annulled under K.S.A. 21-4616 only after judicial inquiry and ruling."

We now continue to hold that annulment under K.S.A. 21-4616 is not automatic. Appellant's probation was successfully served and terminated in September, 1976. The annulment statute, K.S.A. 21-4616, was repealed July 1, 1978. Appellant failed to apply for annulment until January 5, 1979. By then the statute had been replaced with the expungement statute, K.S.A. 1979 Supp. 21-4619, which has certain pronounced limitations affecting appellant's request for annulment. K.S.A. 1979 Supp. 21-4619(*g*) expressly prohibits relief in a situation like the one in which appellant finds himself. That statute now provides:

"[B]ut the expungement of a felony conviction does not relieve an individual of complying with any state or federal law relating to the use or possession of firearms by persons convicted of a felony."

In addition the language of K.S.A. 1979 Supp. 21-4619(*d*)(1) prohibits expungement as follows:

"That the petitioner has not been convicted of a felony in the past two years and no proceeding involving any such crime is presently pending or being instituted against the petitioner;"

A felony murder charge was pending against appellant when he filed his motion to have the 1974 conviction annulled.

Although appellant makes an assertion that he had a vested right in annulment, he provides no legal support for this statement. The above case law and the statutes indicate otherwise. The granting or denial of an application for annulment or expungement of a conviction is a judicial function. Such power contemplates a judicial inquiry and the exercise of judicial discretion in the same way a court exercises discretion in the granting of probation, in the setting of conditions of probation, and in deciding whether probation should be revoked, subject, however, to those limitations imposed by the annulment or expungement statute. Neither annulment nor expungement are automatic procedures.

We turn now to the question raised as to the refusal of the trial court to allow appellant to withdraw his plea of nolo contendere in the bicycle theft case. K.S.A. 22-3210 relating to entry and acceptance of pleas in pertinent part provides:

"(7) A plea of guilty or *nolo contendere,* for good cause shown and within the discretion of the court, may be withdrawn at any time before sentence is adjudged. To correct manifest injustice the court after sentence may set aside the judgment ·of conviction and permit the defendant to withdraw his plea."

Appellant argues that at the hearing on the motion to withdraw the plea the testimony of both the appellant and his mother supported his position that no sentence was to be imposed and that after two years of successfully serving probation the case against appellant was to be dismissed. The appellant testified that in exchange it was agreed that he was to waive preliminary hearing, waive trial by jury, enter his plea, and testify against his codefendant on behalf of the State. A paper in the file of the county attorney also indicated the State had agreed to *recommend* probation and suspension of the imposition of sentence in exchange for appellant's cooperation. In the absence of evidence otherwise we must assume this recommendation was made to the court and rejected.

Although the appellant may have entered his plea in 1974, believing that the conviction would be automatically annulled, this information apparently was given to him by his attorney prior to entry of the plea. The record at the time of sentencing does not indicate that the prosecution or the judge ever made such a promise or stated that the conviction would be automatically annulled on successful termination of probation. The record does

indicate appellant was sentenced for a period of from one to ten years. Sentencing was not suspended in 1974. No objection was then registered by either appellant or his attorney. When appellant completed his period of probation in 1976, he did not thereafter inquire concerning dismissal of the theft charge or annulment of his conviction.

The trial court after considering the conflicts in the evidence found that the motion to withdraw the plea should be overruled. Inherent in such a finding is a negative finding refusing to accept as true the testimony of the appellant and his mother.

A plea of guilty or nolo contendere may be withdrawn after sentence as provided in K.S.A. 22-3210(7) for good cause shown only when in the discretion of the trial court it becomes necessary to correct manifest injustice. Not every deviation from the requirements of the statute governing entry of pleas will require withdrawal of a plea. *Trotter v. State,* 218 Kan. 266, 269, 543 P.2d 1023 (1975). In *Hicks v. State,* 220 Kan. 279, 283, 552 P.2d 889 (1976), we held the failure of the sentencing court to advise the defendant as to his parole eligibility did not require withdrawal of defendant's plea of guilty. Withdrawal of a plea is discretionary with the trial court. Considering the lapse of time and the facts of this case we cannot find the trial court abused its discretion in refusing to permit the appellant to withdraw his plea.

The final issue raised by the appellant is not new to the case law of this state. This court is again confronted with the question decided in *State v. Moffitt,* 199 Kan. 514, Syl. ¶ 6, 431 P.2d 879 (1967), and *State v. Goodseal,* 220 Kan. 487, Syl. ¶¶ 3, 11, 553 P.2d 279 (1976). The question in those cases was whether the collateral felony of unlawful possession of a firearm by an ex-felon under K.S.A. 21-4204 was an inherently dangerous felony so as to support the application of the felony murder rule under K.S.A. 21-3401. This court held in *Moffitt* and *Goodseal* that this possession felony would support the charge of felony murder. Since *Moffitt* and *Goodseal* were decided this rule has been followed in *State v. Guebara,* 220 Kan. 520, 553 P.2d 296 (1976); and *State v. Birch,* 221 Kan. 122, 558 P.2d 119 (1976). Other cases of felony murder which followed *Moffitt* do not appear to rely on the collateral felony of unlawful possession of a firearm by an ex-felon.

For the reasons set forth below a majority of this court has

concluded that it was prejudicial error for the trial court to instruct the jury on the theory of felony murder. Accordingly we reverse the judgment.

This court in arriving at its decision in *State v. Moffitt,* 199 Kan. 514, relied on three California cases, *People v. Ford,* 60 Cal. 2d 772, 36 Cal. Rptr. 620, 388 P.2d 892 (1964); *People v. Williams,* 63 Cal. 2d 452, 47 Cal. Rptr. 7, 406 P.2d 647 (1965); and *People v. Robillard,* 55 Cal. 2d 88, 10 Cal. Rptr. 167, 358 P.2d 295, 83 A.L.R.2d 1086 (1960). In *State v. Goodseal,* 220 Kan. at 491, this court acknowledged that the California Supreme Court had receded from its former position in the foregoing cases in deciding the later case of *People v. Satchell,* 6 Cal. 3d 28, 98 Cal. Rptr. 33, 489 P.2d 1361, 50 A.L.R.3d 383 (1971). The California court ruled in *Satchell* that the unlawful possession of a firearm by a convicted felon, when viewed in the abstract, is not a felony inherently dangerous to human life for purposes of the felony murder rule and will not support a felony murder charge. However, this court in *Goodseal* in a 4-3 decision refused to reverse its previous position taken in *Moffitt,* and continued to rely on *Moffitt* and the cases overruled by the California Supreme Court.

The difference in the result reached in *Satchell* and in *Goodseal* comes from the rules adopted by these respective courts to help determine whether a particular collateral felony could be considered inherently dangerous to human life so as to support a conviction of felony murder. In *Goodseal* the court in considering the nature of the collateral felony not only views the felony in the abstract but also considers the circumstances of its commission. So in *Goodseal* it was not the possession of the firearm but its use by the ex-felon which enabled the court to find the felony was inherently dangerous to human life. In *Satchell* the California court decided that whether a collateral felony is inherently dangerous should be determined by viewing the elements of the crime in the abstract without considering the circumstances of commission. It held the possession was passive and not inherently dangerous to human life. Use of the gun was not considered.

The Kansas felony murder statute provides:

"Murder in the first degree is the killing of a human being committed maliciously, willfully, deliberately and with premeditation *or committed in the perpetration or attempt to perpetrate any felony."* K.S.A. 21-3401. Emphasis supplied.

Under the literal wording of this statute any felony is sufficient to support a charge of felony murder if a causal relation exists. This court in *State v. Goodseal,* 220 Kan. at 492, quoting from a Delaware case, acknowledges that the ostensible purpose of the felony murder doctrine is to deter those engaged in felonies from killing negligently or accidentally, and that the doctrine should not be extended beyond its rational function which it was designed to serve. To invoke the felony murder rule there must be proof that a homicide was committed in the perpetration of or an attempt to perpetrate a felony and that the collateral felony was one inherently dangerous to human life. This court has declared certain rules applicable to such cases. Some of these rules are summarized in *State v. Smith,* 225 Kan. 796, 799-800, 594 P.2d 218 (1979), as follows:

"In order to invoke the felony murder rule under K.S.A. 21-3401, there must be proof that the homicide was committed in the perpetration of or an attempt to perpetrate a felony. This means there must be a direct causal connection between the commission of the felony and the homicide. *State v. Moffitt,* 199 Kan. 514, 534, 431 P.2d 879 (1967); see also 40 Am. Jur. 2d, Homicide § 73, p. 367; 40 C.J.S., Homicide § 21 (b). Moreover, the underlying felony must be one inherently dangerous to human life. *State v. Moffitt,* 199 Kan. at 534. Thus, the State must establish the defendant committed a felony inherently dangerous to human life and the killing took place during the commission of the felony. *State v. Branch and Bussey,* 223 Kan. 381, 382, 573 P.2d 1041 (1978) and cases cited therein."

An interesting discussion of the history of the felony murder rule of various states and countries, including England where it was abrogated in 1957, and the varied application of the rule in this country appears in the Model Penal Code § 201.2, Comment (Tent. Draft No. 9, 1959.) A constructive critique entitled *Felony Murder in Kansas* may be found in 26 Kan. L. Rev. 145 (1977). We recommend both articles to the interested scholar.

Theoretically the elements of malice, deliberation and premeditation which are required for murder in the first degree are deemed to be supplied by felonious conduct alone if a homicide results. It is not necessary for the prosecutor to prove these elements or for the jury to find such elements of the crime. They are established by proof of the collateral felony. *State v. Wilson,* 220 Kan. 341, Syl. ¶ 2, 552 P.2d 931 (1976). Therefore, to support a conviction for felony murder all that is required is to prove that a felony was being committed, which felony was inherently dangerous to human life, and that the homicide which followed

was a direct result of the commission of that felony. *State v. Bey,* 217 Kan. 251, 260, 535 P.2d 881 (1975).

The felony murder rule has logic based on the theory of transferred intent. The malicious and premeditated intent of committing the inherently dangerous collateral felony is transferred to the homicide to supply the elements of malice and premeditation without further proof. Consistent with this thinking, most courts require that the collateral felony be inherently dangerous for the felony murder rule to be applicable. 2 Wharton's Criminal Law § 146, p. 210 (14th ed. 1979).

"In the typical case of felony-murder, there is no malice in 'fact', express or implied; the malice is implied by the 'law'. What is involved is an intended felony and an unintended homicide. The malice which plays a part in the commission of the felony is transferred by the law to the homicide. As a result of the fictional transfer, the homicide is deemed committed with malice; and a homicide with malice is common law murder." 2 Wharton's Criminal Law § 145, p. 204 (14th ed. 1979).

The collateral felony we are dealing with in the present case is defined in K.S.A. 21-4204 as follows:

"(1) Unlawful possession of a firearm is:

"(*a*) Possession of any firearm by an habitual drunkard or narcotics addict; or

"(*b*) Possession of a firearm with a barrel less than twelve (12) inches long by a person who, within five (5) years preceding such violation has been convicted of a felony under the laws of Kansas or any other jurisdiction or has been released from imprisonment for a felony."

This crime is a status crime in that it is limited to drunkards, drug addicts and ex-felons. It is *malum prohibitum.* The possession of the firearm is prohibited because a firearm in the possession of a habitual drunkard, a narcotics addict or an ex-felon is against the public policy of the State as declared by the legislature. The possession of the firearm when viewed in the abstract is not inherently dangerous to human life. This is true because it seems unlikely that mere possession, which has been defined as dominion and control over an object, and not its use, could be undertaken in so dangerous a manner that the prohibited possession would result in murder in the first degree. The above meaning of the possession as contemplated in this firearm statute is taken from *State v. Neal,* 215 Kan. 737, 738-39, 529 P.2d 114 (1974). It appears quite impossible to find an intent in this collateral felony encompassing malice, deliberation and premeditation so as to transfer these elements to the homicide and relieve

the prosecution from proof of the same. If these elements are present in the use of the firearm they are not present in the possession of the firearm. They should then be proven as elements of premeditated first degree murder by reason of the malicious and deliberate use of the gun.

We note that once the *use* of the firearm begins, a separate crime is committed; *e.g.,* assault with a deadly weapon assuming the required intent is present. Aggravated assault is an integral part of the homicide and felony murder cannot be based thereon. *State v. Clark,* 204 Kan. 38, Syl. ¶ 1, 460 P.2d 586 (1969). It follows that unlawful possession of a firearm, when viewed in the abstract, does not harbor the malice and premeditation for the transferred intent so as to make a homicide a felony murder.

Mr. Justice Prager in the dissent in *State v. Goodseal,* 220 Kan. 503, beginning at page 506, sets forth three examples of the illogical results which can flow when a homicide is unintentional and the collateral felony is not viewed in the abstract in determining whether it is inherently dangerous to human life. These examples are as follows:

"For example, let us assume that a defendant, having been previously convicted of felony for writing an insufficient fund check, purchases a firearm to protect himself and his family against criminal invaders of his home. He accidentally drops the gun, causing it to strike the floor and be discharged, killing a guest in his home. Since the killing occurred during commission of a felony, possession of the gun unlawfully, defendant would be precluded from interposing the defense of accident. Under the rule adopted by the majority defendant would be guilty of murder in the first degree and possibly subjected to a term of life imprisonment in the state penitentiary.

"Another example—a farm lad served in the Vietnam war and at the time of his discharge obtained an automatic rifle which he took to his farm home. He wanted the gun not only for the protection of himself and his family but also for use in the killing of predators that might attack his livestock. Under the provisions of K.S.A. 21-4201(1)(*g*) it is a class E felony for any person to possess a firearm capable of discharging automatically more than once by a single function of the trigger. An intruder comes upon the defendant's farm. The defendant points a gun at the intruder, directing him to get off his place. The gun accidentally discharges and kills the intruder. The rule adopted by the majority in this case would require the jury to convict the defendant of murder in the first degree since at the time of the killing the defendant was committing another felony—possession of an automatic weapon—at the time the killing took place.

"One more example should suffice. A defendant having been previously convicted of a felony accidentally shoots another person. At the time defendant was in possession of a firearm with a barrel eleven-inches long. Applying the felony-murder rule the defendant would be guilty of felony murder and upon conviction

a life sentence would be imposed. If the firearm involved in the case had a barrel twelve-inches long the defendant would not be guilty of any criminal offense since the shooting was accidental and would fall into the category of an excusable homicide. It does not seem reasonable to impute malice to the defendant in the first situation and not to do so in the second situation; yet this absurd result would follow under the rule adopted by the majority of the court in this case." 220 Kan. at 506-507.

Further injustice may occur in felony murder cases because the charge of felony murder may strip an accused of the normal defenses possible in a murder case. In the present case, for instance, appellant had no intent to violate the law by possessing the firearm. He believed his previous bicycle theft conviction was automatically dismissed when he successfully completed his probation. He was in error and he possessed a firearm so under the felony murder charge the defenses such as accident, lack of malice and heat of passion were not open to him for the possession establishing the underlying felony could not be disputed. When proof of the underlying felony is strong no instructions on lesser degrees of murder are required. *State v. Sullivan & Sullivan,* 224 Kan. 110, 124, 578 P.2d 1108 (1978); *State v. Reed,* 214 Kan. 562, 564, 520 P.2d 1314 (1974).

In addition, filing a charge under the felony murder rule in most, if not all, cases removes any possibility of establishing the defense of self-defense. Under K.S.A. 21-3211, a person is justified in the use of force against an aggressor when and to the extent it appears to him, and he reasonably believes, that such conduct is necessary to defend himself or another against the aggressor's imminent use of unlawful force. If two men are fighting, as in this case, and one grabs a shotgun he is then the aggressor and the other may defend himself by use of a gun, if he can find one in time. However, under K.S.A. 21-3214 an instruction on self-defense permitted by K.S.A. 21-3211 is not available to a person who is committing a forcible felony. *State v. Purdy,* 228 Kan. 264, 615 P.2d 131 (1980). Under K.S.A. 1979 Supp. 21-3110(8) the definition of forcible felony includes treason, murder, voluntary manslaughter, rape, robbery, burglary, arson, kidnapping, aggravated battery, aggravated sodomy and *any other felony which involves the use or threat of physical force or violence against any person.* Unlawful possession of a firearm is not included in the forcible felonies enumerated nor does it fit within the catch-all phrase at the end of the definition.

Now, where does that leave the person who is confronted with the rule in *Moffitt* and *Goodseal* holding that possession of a pistol after conviction of a felony is inherently dangerous to human life? Logically under *Goodseal* it follows that the defendant when charged with felony murder is not entitled to an instruction on self-defense. If the court considers the use of the firearm to establish that the collateral felony is inherently dangerous to human life, the use also establishes that the collateral felony is a forcible felony. This takes away from the accused the defense of self-defense.

A majority of this court now are convinced that the logic, reasoning and rule urged by Mr. Justice Prager in the dissent in *State v. Goodseal,* 220 Kan. at 503, should be adopted for Kansas. Accordingly, we hold that in determining whether a particular collateral felony is inherently dangerous to human life so as to justify a charge of felony murder under K.S.A. 21-3401, the elements of the collateral felony should be viewed in the abstract, and the circumstances of the commission of the felony should not be considered in making the determination. *State v. Moffitt,* 199 Kan. 514, Syl. ¶¶ 6, 7, and all cases holding to the contrary are disapproved.

The unlawful possession of a firearm proscribed by K.S.A. 21-4204(1)(*b*) when considered in the abstract is not a felony inherently dangerous to human life and will not sustain a conviction for murder in the first degree under the felony murder rule. The rule formerly stated and applied in *State v. Moffitt,* 199 Kan. 514, Syl. ¶¶ 6, 7, 431 P.2d 879 (1967); and its progeny, *State v. Goodseal,* 220 Kan. 487, 553 P.2d 279 (1976); *State v. Guebara,* 220 Kan. 520, 553 P.2d 296 (1976); and *State v. Birch,* 221 Kan. 122, 558 P.2d 119 (1976), is disapproved and overruled.

There remains for consideration the question of retroactive-prospective application of the new rule declared herein. A discussion of the factors to be considered in arriving at a proper solution may be found in *Vaughn v. Murray,* 214 Kan. 456, 464-467, 521 P.2d 262 (1974). We are aware of some of the effects that retroactive application may have on the administration of justice in the courts of this state, and we realize no rule stating the limits of the forward operation, as opposed to that of relation backward, can be declared without possible injustice and hardship in some cases. However, the rule as this day declared shall

govern the present case and be applied to other cases pending on the date the opinion in this case is filed and to all future cases in which the question has been timely raised and presented in the trial court.

The order of the trial court denying annulment of the conviction and refusing to allow withdrawal of the plea of nolo contendere in the bicycle theft case, in Appeal No. 51,420 herein, is affirmed.

The judgment of conviction on the felony murder charge, in Appeal No. 51,401 herein, is reversed and the case is remanded for a new trial.

SCHROEDER, C.J., dissenting. *State v. Moffitt,* 199 Kan. 514, 431 P.2d 879 (1967), has been the law of Kansas for thirteen years. The court now reverses its position on the law in that case regarding felony murder, where the underlying felony is the unlawful possession of a firearm proscribed by K.S.A. 21-4204(1)(*b*).

I would adhere to the law in the *Moffitt* decision.

MILLER and MCFARLAND, JJ., join in the foregoing dissenting opinion.