No. 47,292

THE STATE OF KANSAS, *Appellee*, v. LAUREN JAMES MILLER, *Appellant*.

(520 P. 2d 1248)

Opinion filed April 6, 1974.

*Calvin McMillan,* of Kaplan, McMillan and Anderson, of Wichita, argued the cause, and *Robert W. Kaplan,* of the same firm, was with him on the brief for the appellant.

*Richard L. Hathaway,* Deputy County Attorney, argued the cause, and *Vern Miller,* Attorney General, was with him on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This case involves the interpretation and constitutionality of K. S. A. 1972 Supp. 21-4616 which authorizes the annulment of a conviction on application of the defendant. The defendant-appellant, Lauren James Miller, having previously been

convicted of burglary and grand larceny, sought to avail himself of the provisions of 21-4616 by moving the court for the annulment of that conviction. The facts in the case are not in dispute and are as follows: Some time prior to November of 1969 the defendant, Lauren James Miller, then age 17, along with several other young men was caught stealing from construction sites in Reno county. The defendant and his associates were charged with third degree burglary and grand larceny. The defendant entered a plea of guilty to those offenses and was sentenced on November 19, 1969, to serve one to five years on each count concurrently in the industrial reformatory. The execution of the sentence was suspended and the defendant was placed on probation for a period of three years. With the exception of this conviction and one traffic ticket, the defendant has no criminal record of any kind. After the defendant was placed on probation he fell in love. In the spring of 1970 he learned that his fiancee was pregnant. He and his mother jointly consulted his probation officer in Hutchinson and requested permission to marry. He was led to believe that permission to marry would be granted. Instead, a petition to revoke defendant's probation was filed. On June 2, 1970, the district court revoked the defendant's probation and ordered him to serve the sentence previously imposed the prior November. It is undisputed in the record that the hearing to revoke the defendant's probation was summary in nature and that the sole and only reason for the court's revoking defendant's probation was that he had got his fiancee pregnant and they wanted to get married.

The defendant then served from June 7, 1970, until June 7, 1971, in the reformatory at Hutchinson. On the latter date the defendant was placed on parole by the state board of probation and parole. After his release defendant delayed marrying his fiancee upon the advice of his parole officer until he had a steady job and sufficient funds to support a wife and his child who was born in October 1970. Since his release on parole the defendant has been gainfully employed at all times; started a business of his own, recovering waste oil and cleaning dirt traps at filling stations and garages; purchased a home; married his fiancee in February of 1972; has an excellent relationship with his wife and parents; has matured and has committed no criminal violations other than one speeding ticket. The defendant's parole officer was of the opinion that the defendant had proved his ability to be a

decent law-abiding citizen and recommended that his parole discharge date be moved up from June 7, 1973, to April 7, 1973. In his quarterly report submitted to the board of probation and parole in February 1973, defendant's parole officer concluded that the defendant had proved his ability to be a decent law-abiding citizen and that he should be "awarded" for his efforts. In June of 1973 the defendant learned that two of his associates, who had been convicted at the same time, had had their records annulled in April or May of 1973. Thereafter the defendant moved the district court of Reno county for an annulment of his conviction pursuant to 21-4616.

On June 25, 1973, a hearing was held in district court on the defendant's motion for annulment of conviction. At this hearing there was testimony by the defendant, Lauren James Miller, his wife, Jessie Lee Miller, and his mother, Julie A. Miller. This testimony brought forth the facts just stated above. In addition the defendant testified that his sentence and confinement in the reformatory taught him respect for the law and he felt expungement of his conviction would aid him in obtaining future employment since it would relieve him of his criminal record. He further testified that he was 17 years of age at the time of the commission of the crime for which he was convicted, that he had been involved in no criminal activities since his conviction, that he is a law-abiding citizen of the community of Wichita in which he lives, and that his marriage and family have given him an incentive to accept both the responsibilities of his marriage and of citizenship in his community. The defendant further testified that he paid approximately $90 to $100 in restitution through the district court on his original probation order but that on advice of his parole officer, Mr. Lindt, he had not paid anything further after being sentenced to the state reformatory. Defendant stated he would be willing to pay the total amount of restitution if necessary for the annulment of his conviction. Jessie Lee Miller, defendant's wife, testified that she and the defendant were married in February of 1972, following the birth of their child in October 1970. She stated that defendant was a dutiful husband, a good father and a good provider. It was her judgment that the failure to expunge her husband's criminal record would be a great impediment to her husband's future. She and her husband have an excellent relationship. They have purchased a house and are doing very well.

The only other witness at the hearing was Julie A. Miller, the

defendant's mother. She testified that the only reason that her son's probation had been revoked in the first instance was because of his desire to marry his fiancee and that she had no knowledge of any other violation of her son which could have resulted in a revocation of his probation. She urged the court not to require her son to go through life with a criminal record since he has made a sincere and successful effort to right the wrong which he committed. It is obvious from the record that the district judge was concerned about the defendant's getting his fiancee pregnant after the defendant was placed on probation. He asked the defendant's mother if she considered that worthy conduct of him. In reply she stated that she did not consider it worthy conduct but when they wanted to go ahead and get married she did not consider it a crime. Thereupon the following colloquy took place between court and counsel:

"The Court: 'The court is going to find that K. S. A. 21-4616 is unconstitutional in that it provides the Court with no guidelines to exercise the discretion that it has given the Court, and the word "May" is used and there is no guidelines whatsoever how to exercise the discretion. The Court will find that in this case the record shows that it should not be expunged.'

"Mr. McMillan: 'Thank you, your Honor. May I ask the Court is that the only reason for not granting the relief asked for is the unconstitutionality question?'

"The Court: 'Well that *plus the fact of the record that I have heard here now.*'" (Emphasis supplied.)

It should be noted that the court held 21-4616 unconstitutional on its own motion and that in addition thereto denied relief on the basis of the testimony presented at the hearing. The defendant has taken a timely appeal to this court from the denial of his motion for annulment of his conviction.

We should first examine carefully the provisions of K. S. A. 1972 Supp. 21-4616 which states as follows:

"21-4616. Annulment of certain convictions; effect. Every defendant who had not attained the age of twenty-one (21) years at the time of the commission of the crime for which he was convicted, and who has served the sentence imposed or who has fulfilled the conditions of his probation or suspension of sentence for the entire period thereof, or who shall have been discharged from probation prior to the termination of the period thereof, *may* at any time thereafter be permitted by the court to withdraw his plea of guilty and enter a plea of not guilty; or if he has been convicted after a plea of not guilty, the court *may* set aside the verdict of guilty; and in either case, the court *shall* thereupon dismiss the complaint, information or indictment against such defendant, who *shall* thereafter be released from all penalties and

disabilities resulting from the crime of which he has been convicted, and he *shall* in all respects be treated as not having been convicted, except that upon conviction of any subsequent crime such conviction may be considered as a prior conviction in determining the sentence to be imposed. The defendant *shall* be informed of this privilege when he is placed on probation or suspended sentence.

"In any application for employment, license or other civil right or privilege, or any appearance as a witness, a person whose conviction of crime has been annulled under this statute may state that he has never been convicted of such crime." (Emphasis supplied.)

This statute applies only to youthful offenders who had not attained the age of 21 years at the time of the commission of the crime. 21-4616 was enacted in 1971. In 1973 the legislature enacted K. S. A. 1973 Supp. 21-4617 which made possible the expungement of criminal records of adult offenders who were 21 years of age or older at the time of the commission of the crime. A similar provision was placed in the Code of Procedure for Municipal Courts in section K. S. A. 1973 Supp., 12-4514, which provides for the annulment of convictions in municipal courts.

Over the past 50 years American correctional law, turning away from the vengeance concept, has focused increasingly on the re-habilitation of the individual offender and the development of means and practices appropriate to that end. It has become common knowledge today that a criminal record is a serious handicap which works against the rehabilitation of the ex-offender. The consequences of a criminal conviction include not only the formal penalties and restrictions imposed by law but also collateral sanctions incidentally imposed by society. Although the criminal offender has paid his debt imposed by law, society stigmatizes him with the ex-convict label. In *United States v. Morgan,* 346 U. S. 502, 98 L. Ed. 248, 74 S. Ct. 247, the Supreme Court of the United States pointed this out in the following language:

". . . Of course the record of a conviction for a serious crime is often a lifelong handicap. There are a dozen ways in which even a person who has reformed, never offended again, and constantly endeavored to lead an upright life may be prejudiced thereby. The stain on his reputation may at any time threaten his social standing or affect his job opportunities, . . ." (p. 519.)

One author describes the problem in this manner:

"It is not the explicitly articulated disabilities which are most troublesome to the reformed offender. It is rather the less-direct economic and social reprisals engendered by his brand as an adjudicated criminal. The vagaries of public sentiment often discriminate against persons with a criminal past, with very little regard for the severity of the offense, and they do not frequently

distinguish between persons arrested and acquitted or otherwise released and persons convicted. This is particularly true in the vital matter of employment, which perhaps as much as anything else influences a man's concept of himself and his worth, and accordingly influences the values which guide his conduct." (Gough, *The Expungement of Adjudication Records of Juvenile and Adult Offenders: A Problem of Status,* 1966 Wash. U. L. Q. 147 at 153.)

For over a decade the National Council on Crime and Delinquency has urged the passage of legislation to authorize the trial courts of this country to annul a record of conviction, thus facilitating the return to normal living of an offender. The National Council drafted a model act to achieve this purpose which may be found along with a discussion of the problem in 8 Crime and Delinquency 97.

More recently the American Bar Association Standards for Criminal Justice have recognized the necessity for such legislation. Standards for Criminal Justice relating to Probation § 4.3 provides as follows:

"4.3 Criminal record. Every jurisdiction should have a method by which the collateral effects of a criminal record can be avoided or mitigated following the successful completion of a term on probation and during its service."

The advisory committee which drafted this standard stated that it was not as concerned with the form which such statutes take as it is with the principle that flexibility should be built into the system and that effective ways should be devised to mitigate the scarlet letter effect of a conviction once the offender has satisfactorily adjusted. Several states including Alaska, Arizona, California, Delaware, Idaho, Indiana, Michigan, Minnesota, Missouri, New Jersey, Texas, Utah, Washington and Wyoming have already enacted progressive legislation aimed at the expungement of criminal records and annulment of related convictions. These statutes take a wide variety of forms but all are directed to the basic purpose of assisting an ex-offender to overcome the stigma of a criminal record. A procedure for setting aside a conviction is also provided in the Federal Youth Corrections Act, 18 U. S. C. A. § 5021. In *Mestre Morera v. United States Immigration & Nat. Serv.,* (1st Cir. 1972) 462 F. 2d 1030, it is stated that the purpose of that federal statute is to relieve the youthful offender not only of the usual disabilities of a criminal conviction, but also to give him a second chance free of a record tainted by such a conviction.

In a general way it may be stated that annulment of conviction statutes, often called expungement statutes, do not merely lift dis-

abilities resulting from conviction and restore civil rights; they have the legal effect of restoring the reformed offender to his status quo existing prior to the conviction. We think it clear that K. S. A. 1972 Supp. 21-4616 was enacted to relieve youthful offenders from the social and economic stigma resulting from criminal convictions and to offer them an added incentive to conform to social norms and to participate in our society without the added burden of a criminal conviction. An annulment of conviction statute is an aid to an ex-offender in regaining his human dignity and self-esteem. It is a legislative recognition of the fact that ex-offenders need the understanding and respect of others—not their scorn and ill will. Such statutes are based on the philosophy that fallen men can rise again and should be helped to do so.

With this background in mind we now turn to the specific issues which have been raised on this appeal. The appellant contends that the provisions of 21-4616 are mandatory, not discretionary, and that annulment of conviction relief must be granted automatically when the defendant shows that he had not attained the age of 21 years at the time of the commission of the crime for which he was convicted and that he has either served the sentence imposed or successfully fulfilled the conditions of his probation or parole. It is true that in some states statutory annulment of conviction provisions are held to be mandatory. This is true of California. (*People v. Johnson,* 134 Cal. App. 2d 140, 285 P. 2d 74.) Furthermore the setting aside of a conviction under the Federal Youth Corrections Act is automatic. We believe, however, that 21-4616 is by its express language permissive rather than mandatory and that some discretion is vested in the trial court in granting an offender annulment of his conviction. We note in particular that the word "may" is used with reference to the court's granting permission to the offender to withdraw his plea of guilty or to set aside a verdict of guilty and that in either case the court "shall" thereupon dismiss the charges against the defendant. We interpret the statute to place in the trial court some discretion in granting the relief.

Having found the granting of relief under the statute resting within the sound discretion of the trial court, we now turn to the constitutional issue which has been raised. The trial court held 21-4616 unconstitutional because it does not provide the district court with specific guidelines to exercise its discretion. The state in its brief contends that granting to a district court the power to

annul a conviction constitutes a delegation of *legislative* power, and since no standards for the exercise of this power have been set forth, the statute is unconstitutional. We do not agree with the state or with the trial court that the power to annul a criminal conviction is necessarily a legislative power. In our judgment the statute simply provides to the district courts of this state an additional tool to be used in the sound discretion of the court as an aid to the rehabilitation of criminal offenders. Like the granting of probation the annulment of a conviction is a part of the sentencing process. The sentencing judgment is a judicial function and the granting or denial of probation under 21-4603 is a part of the sentencing process vested in the trial court. (*State v. Owens & Carlisle,* 210 Kan. 628, 504 P. 2d 249.) Likewise the granting or denial of an application for annulment of a conviction is a judicial function. Such power contemplates a judicial inquiry and the exercise of judicial discretion in the same way that a court exercises its discretion in the granting of probation, in setting conditions of probation, and in deciding whether or not probation should be revoked. The granting or denial of an application for the annulment of a conviction rests within the district court's sound discretion. We hold that the trial court erred in finding that 21-4616 is unconstitutional.

The state next takes the position on this appeal that 21-4616 may be applied arbitrarily or discriminatorily by judicial whim or caprice, that the statute permits the district court to have one result in one case and an opposite result in the next case in the same court on the same day and under the same or similar facts. The state argues that the court is sole judge of the exercise of its discretion and that there are no rules, conditions, restrictions, limitations, yardstick, guides or other indicators governing the court in its application of the statute. We do not agree. Judicial discretion must always be exercised within the bounds of reason and justice. Judicial discretion is abused when it is arbitrary, fanciful or unreasonable, where no reasonable man would take the view adopted by the trial court. In exercising its judicial discretion under 21-4616 the district court must act reasonably with the end in mind of achieving the legislative purpose. It should take into consideration the objectives sought by the legislature including the protection of the public and the rehabilitation of the offender. It is contemplated that before the district court acts on the motion it will require any necessary investigation through the resources of

the probation department or other sources available to it. It is assumed that the court will make a judicial inquiry and not act in a vacuum of facts.

We hold that the filing of a simple request with supporting evidence to show compliance with the statutory requirements should constitute *prima facie* entitlement to the annulment of a conviction. Annulment of conviction should be granted unless the court finds some strong affirmative cause to deny it. In other words the norm should be the granting of relief under 21-4616 unless the state shows some good compelling reason not to grant it. The district court might well be justified in denying the relief where the evidence shows that the defendant has some marked propensity toward continuing criminal conduct or that he remains a clear and present danger to the public. Annulment of conviction should not, however, be denied for some frivolous reason.

With these principles in mind we now consider whether the trial court abused its discretion in denying annulment of conviction to the defendant, Lauren James Miller. We interpret the record to mean that the trial court considered the evidence presented and denied the motion. On the entire record before us here we find that the district court abused its discretion in not granting to the defendant, Miller, an annulment of his conviction. The facts presented at the annulment hearing clearly demonstrated that the defendant has made every conceivable effort to conform to the norms and demands of our society. He received an early discharge from his parole on the recommendation of his parole officer who concluded that the defendant had proved his ability to be a decent law-abiding citizen. He has a steady job with which to support his wife and family. He has purchased a home. There is no evidence whatsoever in the record to show that the defendant has any propensity toward continuing criminal conduct or that he is a clear or present danger to the public. The evidence is all to the contrary.

The judgment of the trial court is reversed and remanded with directions to the district court to enter an order annulling the defendant's conviction in accordance with the provisions of K. S. A. 1972 Supp. 21-4616.