No. 87,620 ·

STATE OF KANSAS, *Appellee*, v. MILDA J. SANDSTROM, a/k/a Jo M. Jackson, *Appellant*.

(44 P.3d 434)

Opinion filed April 19, 2002.

*Deborah L. Hughes*, assistant district attorney, argued the cause, and *Carla J. Stovall*, attorney general, was with her on the brief for appellee.

*Richard P. Senecal*, of Duncan-Senecal Law Offices, Chtd., of Atchison, argued the cause and was on the brief for appellant.

The opinion of the court was delivered by

McFARLAND, C.J.: Milda Sandstrom, a/k/a Jo M. Jackson, appeals from the district court's denial of her petition to expunge her 1977 first-degree murder conviction.

## THE CRIME

In 1977 Sandstrom was convicted of the first-degree murder of her husband. The basic facts were summarized in the opinion affirming her conviction as follows:

"The factual circumstances surrounding the homicide are not directly involved in the appeal and need not be stated in great detail. Suffice it to say, the evidence presented in the case was undisputed that the defendant and her husband, Thad M. Sandstrom, had an unsatisfactory and rather stormy marriage for several years. Mr. Sandstrom decided to file suit for divorce and did so while the defendant was visiting friends in Oklahoma. The defendant, receiving notice of the suit, returned to Topeka. While en route she purchased a .32-caliber pistol and ammunition at Paul's Valley, Oklahoma. When she returned to her home in Topeka, she entered the house and shot her husband while he was in bed. At the time of the trial, the evidence was undisputed that the defendant had shot and killed her husband. The only defense presented to the charge was that the defendant was legally insane at the time the homicide occurred. The issue of the defendant's sanity was hotly contested. The jury rejected the defense of insanity and found the defendant guilty

of murder in the first degree. The defendant was sentenced to life imprisonment." *State v. Sandstrom*, 225 Kan. 717, 718, 595 P.2d 324 (1979).

## EXPUNGEMENT HEARING

Sandstrom called six witnesses plus herself. The State called no witnesses and cross-examined only Sandstrom. The State filed a written argument against expungement. The evidence may be summarized as follows. Sandstrom was 53 years old at the time she killed her husband. While in prison, Sandstrom established herself as a model prisoner who resided on the honor floor. She occupied various positions of trust. Her work included audio recording of books for the blind, the prison inmate rule book, and various vocational books. She worked outside the walls at times and organized the prison law library. Sandstrom served 15 years of her life sentence and was paroled in 1992.

After her release from prison, Sandstrom moved to Arizona where she lived and gained employment with the assistance of friends she had met through her prison activities. Between 1992 and 2000, under the new name of Jo Jackson, Sandstrom worked at six increasingly responsible jobs. Sandstrom is a Marine Corps veteran with a master's degree. While living in Arizona, she has engaged in many volunteer activities. Clearly Sandstrom has done very well for an individual leaving prison destitute at age 68 after serving 15 years. She is now 78 years of age and is seeking expungement of her murder conviction.

Sandstrom testified her conviction has caused her difficulty in renting apartments and in securing a bonded job. She has passed an examination to become a substance abuse counselor, but her conviction precludes board certification. On a personal level she is seeking expungement for her own self respect and the respect of her friends and supporters.

The State called no witnesses at trial. In its written response to the petition filed in connection with the hearing the State argued, *inter alia*:

"The memory of this community will never be shed of the remembrance of Thad Sandstrom and his wife Milda. His public life, his death, her trial, and her release on parole 15 years later are not matters which will be erased from memory.

No amount of judicial creativity or legislative license will eradicate that. The crime, conviction, sentence and parole are parts of the recent history of Topeka and its denizens. Both the victim and the Petitioner were highly visible public figures whose living and dying occurred on the Ten O'clock News for all to see. The figures in this case were larger than life. Thad Sandstrom was a molder and shaper of public opinion, a civic leader with a wide audience, a man whom Governors called friend. The Petitioner was an active Topekan whose position was not merely a reflection of her husband but one created and fostered independently by her own thoughts and deeds. The life and death of Thad Sandstrom have their analog in Greek tragedy. Even the gods on high have their frailties and must suffer their own fates irrespective of the heights they have achieved. And like Greek tragedy, the facts of the Sandstrom homicide will survive time and expungement."

## APPLICABLE STATUTE

The parties have stipulated that the applicable form of the expungement statute is K.S.A. 1977 Supp. 21-4617, which provides:

"Every offender who was twenty-one (21) years of age or older at the time of the commission of the crime for which he or she was [convicted] and who has served the sentence imposed or who has fulfilled the conditions of his or her probation, suspension of sentence, conditional release or parole for the entire period thereof, or who shall have been discharged from probation, conditional release or parole prior to the termination of the period thereof, may petition the court five (5) years after the end of such sentence, the fulfilling of such conditions of probation, suspension of sentence, conditional release or parole or such discharge from probation, conditional release or parole and may request that his or her record be expunged of such conviction if during such five (5) year period such person has exhibited good moral character and has not been convicted of a felony. In considering any such request for expungement, the court shall have access to any records or reports relating to such offender, including records or reports of a confidential nature, on file with the secretary of corrections or the Kansas adult authority."

The present expungement statute is K.S.A. 2001 Supp. 21-4619. Said statute expressly excludes first-degree murder from consideration for possible expungement, an exclusion not found in the statute before us.

## DISTRICT COURT DECISION

The district court's decision in denying the petition for expungement is set forth, in pertinent part, as follows:

"Although there exists no Kansas case law on point, courts, when deciding whether to grant such a petition, typically employ a balancing test, weighing the benefit the petitioner would gain from expungement against the public's interests in maintaining the petitioner's criminal record. *See State of Minnesota v. Ambaye*, 616 N.W.2d 256 (2000); *see also Commonwealth of Pennsylvania v. Butler*, 672 A.2d 806 (1996).

"Petitioner first contends expungement would benefit her by allowing her to obtain employment with greater ease. However, '[e]mployers, sometimes pursuant to law and sometimes voluntarily, have required background checks in order to "assess any potential risk involved with hiring certain individuals.' " *Ambaye*, 616 N.W.2d at 261. Therefore, 'the benefit [Petitioner stands] to gain from expungement, if granted, would override the very purpose of the background check.' In addition, the fact that Petitioner is presently gainfully employed, earning $28,265 annually, further weighs against expungement.

"Petitioner also believes expungement would allow her to gain self-respect. However, the Court is of the opinion that Petitioner's actions in the community are what will allow her to regain her self-respect. The Court does not have the power, by granting Petitioner's expungement request, to erase the past and make it as though Petitioner did not commit the crime for which she has been convicted.

"The Court has reviewed the voluminous trial, motion, and sentencing transcripts of the Sandstrom trial. Based upon these documents, the Court has ascertained that Petitioner exerted a lot of thought and time in purchasing the gun and ammunition, and in preparing for the killing. The murder itself was committed in a very surreptitious manner. The American Heritage Dictionary, Second College Edition, *Houghton Mifflin Company*, defines the term expunge as '1. To erase or strike out. 2. To obliterate completely; annihilate . . . .'

"It is undisputed that Petitioner is guilty of the crime of murder in the first degree. In light of this certainty, and in light of the gravity of Petitioner's crime, the Court finds and concludes that the public's interest in maintaining Petitioner's record of murder is exceptionally compelling, and the Court will not grant annulment or expungement of the conviction. Consequently, upon balancing the benefits Petitioner alleges she would gain from expungement against the public's interest in maintaining Petitioner's criminal record, the Court concludes that the public's interests prevail.

"For the reasons set forth above, the Court hereby denies the Petition for Expungement."

The parties agree the applicable standard of review is that of abuse of discretion. *State v. Miller*, 214 Kan. 538, Syl. ¶ 2, 520 P.2d 1248 (1974). Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only when no reasonable person would take the view adopted by the trial court. If reasonable persons

could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion. *State v. Wagner*, 248 Kan. 240, 242, 807 P.2d 139 (1991).

## ANALYSIS

Sandstrom argues that because of her postconviction exemplary record, she is entitled to have her conviction expunged. The State argues that the district court made a reasoned decision that the public interest in maintaining the record of the murder conviction outweighed the benefits Sandstrom sought to gain from the expungement. Further, the State argues that the district court decision is not arbitrary and, accordingly, must be affirmed.

Both parties rely on *Miller*, 214 Kan. 538, in support of their respective positions. There is language in *Miller* which supports each of these opposing views. It is appropriate to spend some time analyzing *Miller*. The old saying about harsh facts making for bad law finds a home in *Miller*. The law did not do very well by Miller and our opinion sought to undo some of the harm.

Miller was caught stealing items from construction sites when he was 17 years old. He pled guilty to burglary and grand larceny and was sentenced to 1 to 5 years in the reformatory. The court suspended execution of his sentence and placed Miller on probation. When his fiancee became pregnant, Miller and his mother approached his probation officer for permission for Miller to get married. Instead of receiving the requested permission, proceedings commenced to revoke Miller's probation for the sole reason that he had impregnated his fiancee and wanted to marry her. After revoking his probation, the court sentenced Miller to serve 1 year in the reformatory. While on parole, Miller demonstrated his ability to be a law-abiding citizen, and his parole officer recommended early release as a reward for Miller's efforts.

At the expungement hearing the foregoing facts were established. Additionally, it was shown Miller had married his fiancee and was a good husband and provided for his family. Miller was shown to have matured into a responsible citizen who was being and would be stigmatized for his youthful conviction. Other than this conviction, Miller's record showed one traffic ticket. Despite

Miller's good record, the district court, in denying expungement, seemed to focus on the pregnancy. Without any specific factual findings, the district court held that *"the record shows it [the conviction] should not be expunged."* (Emphasis added.) 214 Kan. 541.

With obvious disapproval of the district court's actions herein, this court held:

"We hold that the filing of a simple request with supporting evidence to show compliance with the statutory requirements should constitute *prima facie* entitlement to the annulment of a conviction. Annulment of conviction should be granted unless the court finds some strong affirmative cause to deny it. In other words the norm should be the granting of relief under 21-4616 unless the state shows some good compelling reason not to grant it. The district court might well be justified in denying the relief where the evidence shows that the defendant has some marked propensity toward continuing criminal conduct or that he remains a clear and present danger to the public. Annulment of conviction should not, however, be denied for some frivolous reason." 214 Kan. at 546.

Clearly the facts in *Miller* show him to be a poster boy for everything expungement was created to accomplish. The *Miller* court went on to hold that the record was all in Miller's favor and supported expungement. The *Miller* court concluded with a determination that denial of expungement was an arbitrary act and summarily reversed the district court.

Sandstrom argues she, too, has made the prima facie showing of entitlement to expungement and its denial was arbitrary. The State, on the other hand, points to the fact that the statute in *Miller* applied only to youthful offenders (under age 21). Syllabus ¶ 1 specifically states:

"K.S.A. 1972 Supp. 21-4616 providing for the annulment of convictions was enacted to relieve youthful offenders from the social and economic stigma resulting from criminal convictions and to offer them an added incentive to conform to social norms and to participate in our society without the added burden of a criminal conviction."

Miller's youthful indiscretion is highly distinguishable from the facts herein. *Miller*, despite its expansive language giving rise to the inference of entitlement, specifically holds:

"Likewise the granting or denial of an application for annulment of a conviction is a judicial function. Such power contemplates a judicial inquiry and the exercise of judicial discretion in the same way that a court exercises its discretion in the

granting of probation, in setting conditions of probation, and in deciding whether or not probation should be revoked. The granting or denial of an application for the annulment of a conviction rests within the district court's sound discretion." *Miller*, 214 Kan. at 545.

See also, *State v. Underwood* 228 Kan. 294, 298, 615 P.2d 153 (1980) (citing same language with approval and holding that annulment is not automatic).

For reasons of vindication, closure, self esteem, ease of employment advancement, and the like, Sandstrom wants her first-degree murder conviction erased. The district court weighed Sandstrom's claimed benefits against the public's interest in keeping the conviction on the record. The district court held in favor of the public interest. We find no abuse of discretion in that determination.

The judgment is affirmed.