SALVATORE TOIA, Petitioner-Appellant, v. THE PEOPLE OF THE STATE OF ILLINOIS, Respondent-Appellee.

First District (1st Division) No. 1—00—3999

Opinion filed August 12, 2002.

Mark W. Solock, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Janet Powers Doyle, and Barbara L. Jones, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE COHEN delivered the opinion of the court:
Petitioner Salvatore Toia appeals the circuit court's denial of his petition to expunge the record of his 1992 arrest for driving while under the influence of alcohol (625 ILCS 5/11—501(a)(1) (West 1992)) (DUI). In denying Toia's petition, the circuit court concluded that Public Act 89—637, a 1997 amendment to section 5—6—3.1(f) of the Unified Code of Corrections (Pub. Act 89—637, eff. January 1, 1997 (amending 730 ILCS 5/5—6—3.1(f) (West 1994) (specifying conditions of supervision)), specifically excluded DUI arrest records from those subject to expungement.

On appeal, Toia argues that by denying him the opportunity to expunge his DUI arrest record, Public Act 89—637 increased his punishment in violation of the *ex post facto* clauses of the United States and Illinois Constitutions (U.S. Const., art. I, § 9; Ill. Const. 1970, art. I, § 16). As a matter of first impression, we find that Public Act 89—637 does not violate the *ex post facto* clauses by barring expungement of DUI arrest records. We therefore affirm the judgment of the trial court.

## BACKGROUND

On April 1, 1992, Salvatore Toia was charged with multiple traffic offenses, including driving while under the influence of alcohol (625 ILCS 5/11—501(a)(1) (West 1992)). Toia pled guilty and was sentenced to one year of court supervision. The terms of Toia's supervision included paying a $450 fine plus costs, as well as attending 10 hours of Level I alcohol and drug remedial education classes. On May 14, 1993, Toia successfully fulfilled the conditions of his supervision. The court then discharged and dismissed the supervision.

Former section 5—6—3.1(f) of the Unified Code of Corrections (730 ILCS 5/5—6—3.1(f) (West 1992)), in effect on the date of Toia's guilty plea, allowed Toia to petition the circuit court for expungement of his DUI arrest record once five years had passed from the date his supervision was discharged and dismissed. During that five-year period, however, the legislature passed Public Act 89—637 (Pub. Act 89—637, eff. January 1, 1997 (amending 730 ILCS 5/5—6—3.1(f) (West 1994))), which abolished the five-year waiting period for expungement of DUI arrest records. Public Act 89—637 further amended section 5—6—3.1(f) to state that "[a] person placed on supervision for [DUI]

*shall not* have his or her record of arrest sealed or expunged." (Emphasis added.) Pub. Act 89—637, eff. January 1, 1997.[1]

On November 2, 1999, Toia filed a petition for expungement of his DUI arrest record. Following a hearing, the circuit court denied Toia's petition, stating:

> "This Court having considered the arguments that I have heard, having considered the Statutes, having considered the law as I understand it, and also being aware that the Motion to Expunge is discretionary on the court, the Court believes that the Legislature did intend by passing [Public Act 89—637] to make supervisions under Driving Under the Influence not expungeable. The Court, therefore in its discretion will deny your Motion to Expunge. The Motion to Expunge is denied."

This appeal followed.

## ANALYSIS

### I. Discretion

■ Before we consider Toia's constitutional challenge, we first clarify the law with respect to the circuit court's statement that it denied Toia's petition "in its discretion." "[A]n individual is eligible for expungement only where the legislature has authorized expungement." *People v. Thon,* 319 Ill. App. 3d 855, 859 (2001). The pre-amendment version of section 5—6—3.1(f) allowed circuit courts to exercise discretion in deciding whether to expunge DUI arrest records once five years had passed since discharge and dismissal of a petitioner's supervision. 730 ILCS 5/5—6—3.1(f) (West 1992) ("[A] person *may* have his record of arrest sealed or expunged as *may* be provided by law"). (Emphasis added.) See also *People v. Wells,* 294 Ill. App. 3d 405, 408-09 (1998) (finding a substantially similar provision in the Criminal Identification Act (20 ILCS 2630/5 (West 1994)) to be discretionary). In passing Public Act 89—637, however, the legislature was unequivocal: a person placed on supervision for DUI *"shall not* have his or her record of arrest sealed or expunged." (Emphasis added.) Pub. Act 89—637, eff. January 1, 1997. It is a fundamental canon of statutory construction that use of the word "shall" denotes a "clear expression of legislative intent to impose a mandatory obligation." *People v. O'Brien,* 197 Ill. 2d 88, 93 (2001); *Wells,* 294 Ill. App. 3d at 409.

---

[1]Public Act 89—637 also amended section 5 of the Criminal Identification Act (20 ILCS 2630/5 (West 1996)) to state that DUI arrest records "shall not be expunged." Pub. Act 89—637, § 3, eff. January 1, 1997 (amending 20 ILCS 2630/5 (West 1994)).

Therefore, expungement of Toia's arrest record was no longer a matter within the circuit court's discretion. The passage of Public Act 89—637 clearly obviated that discretion and imposed an absolute bar to expungement. See *People v. Beasley*, 109 Ill. App. 3d 446, 453 (1982) (concluding that the passage of Public Act 81—851 (Pub. Act 81—851, eff. September 20, 1979) removed from the circuit courts their discretion under the Dangerous Drug Abuse Act (Ill. Rev. Stat. 1979, ch. 91$^{1}$/$_2$, par. 120.10) in determining whether to advise defendants of the possibility of being sentenced to probation in return for participating in drug treatment). However, as the circuit court denied Toia's petition, any error it made in stating the basis for its ruling was harmless. See *People v. Everette*, 141 Ill. 2d 147, 158-59 (1990) (allowing this court to affirm a decision of the circuit court on any basis in the record, regardless of whether the circuit court's reasoning was correct).

## II. *Ex post facto*

■ We now turn to the substance of Toia's appeal. Toia argues that by denying him the opportunity to expunge his DUI arrest record, Public Act 89—637 increased his punishment in violation of the *ex post facto* clauses of the United States and Illinois Constitutions (U.S. Const., art. I, § 9; Ill. Const. 1970, art. I, § 16). Toia's appeal frames an issue of first impression in Illinois. Because the appeal contests the constitutionality of a statute, the question is one of law and our review is *de novo. People v. Falbe*, 189 Ill. 2d 635, 638 (2000).

■ We first dispose of Toia's nonsensical argument that "[t]he fact that the disposition of supervision was expungeable constituted a condition of the sentence." On the contrary, the trial court's order clearly states that in addition to the standard terms of supervision,[2] the only conditions the court imposed on the discharge and dismissal of Toia's supervision were payment of a $450 fine plus costs and successful completion of 10 hours of Level I alcohol and drug remedial education classes. The trial court's authority to impose these conditions is beyond dispute. 730 ILCS 5/5—6—3.1(b), (c) (West 1992). Toia's argument fails.

■ "It is our duty to affirm a statute's constitutionality and validity if reasonably possible. [Citations.] The statute enjoys a presumption of constitutionality [citation], and any doubts must be resolved in favor of the validity of the law in question [citation]." *Falbe*, 189 Ill. 2d at 639.

---

[2]"[D]efendant shall: (1) not violate any criminal statute of any jurisdiction; (2) refrain from possessing a firearm or other dangerous weapon; (3) not leave the State of Illinois without consent of the Court or without prior notification and approval of the Social Service Department; and (4) notify the Social Service Department within 72 hours of any change of address."

■ "Illinois courts construe the *ex post facto* clause of the Illinois Constitution of 1970 in step with the United States Supreme Court's construction of the *ex post facto* clause of the United States Constitution." *People v. Starnes*, 273 Ill. App. 3d 911, 914 (1995). "Under either provision, a criminal law will be considered *ex post facto* where it (1) is retrospective in that it applies to events occurring prior to its enactment, and (2) falls into one of the traditional categories of prohibited criminal laws." *People v. Pena*, 321 Ill. App. 3d 538, 541 (2001). "These traditional categories include any statute that punishes as a crime an act previously committed and innocent when done; laws that make the punishment for a crime more burdensome after its commission; and statutes that deprive one charged with a crime of any defense available at the time when the act was committed." *Pena*, 321 Ill. App. 3d at 541.

"[T]he constitutional prohibition against *ex post facto* laws concerns criminal matters solely and has no application to civil law." *Steinmetz v. Board of Trustees of Community College District No. 529*, 68 Ill. App. 3d 83, 86 (1978). It cannot reasonably be argued that the statutes amended by Public Act 89—637—the Unified Code of Corrections (730 ILCS 5/5—6—3.1 (West 1994)) and the Criminal Identification Act (20 ILCS 2630/5 (West 1994))—concern matters outside the sphere of criminal law.

■ We next note that the provisions of Public Act 89—637 effected a procedural, rather than substantive, change. However, procedural changes, even those that work to the disadvantage of a defendant, may be applied retroactively if they do not create a new offense or increase punishment. *Dobbert v. Florida*, 432 U.S. 282, 293, 53 L. Ed. 2d 344, 356, 97 S. Ct. 2290, 2298 (1977); *People v. Felella*, 131 Ill. 2d 525, 536-37 (1989). In passing Public Act 89—637, the legislature altered the criminal record-keeping process so that arrest records for DUI offenses resulting in supervision could no longer be expunged. There was no change to the quantum of punishment imposed, *i.e.*, the length of a given term of supervision or any additional condition imposed as a prerequisite to a subsequent finding of discharge and dismissal. *Dobbert*, 432 U.S. at 294, 53 L. Ed. 2d at 356-57, 97 S. Ct. at 2298-99. " 'The [elements of the] crime [with] which the present defendant was [charged], the punishment prescribed therefor, and the quantity or the degree of proof necessary to establish his guilt, all remained unaffected by the subsequent statute.' " *Dobbert*, 432 U.S. at 294, 53 L. Ed. 2d at 357, 97 S. Ct. at 2298-99, quoting *Hopt v. Utah*, 110 U.S. 574, 589-90, 28 L. Ed. 262, 268-69, 4 S. Ct. 202, 210 (1884). See also *Pena*, 321 Ill. App. 3d at 543 (discussing procedural nature of contested juvenile transfer provision).

There is no question that Public Act 89—637 has retroactive effect within the meaning of *Pena*. 321 Ill. App. 3d at 541. At the time of Toia's guilty plea, he was entitled to petition for expungement of his DUI arrest record once five years had passed from the date his supervision was discharged and dismissed. 730 ILCS 5/5—6—3.1(f) (West 1992). During that five-year period, however, the passage of Public Act 89—637 conclusively barred the circuit court from considering such a petition. Pub. Act 89—637, eff. January 1, 1997 (amending 730 ILCS 5/5—6—3.1(f) (West 1994)). See *People v. Malchow*, 193 Ill. 2d 413, 418-19 (2000) (finding retroactive effect in both the Sex Offender Registration Act (730 ILCS 150/1 *et seq.* (West 1998)) (Registration Act) and the Sex Offender and Child Murderer Community Notification Law (730 ILCS 152/101 *et seq.* (West 1998)) (Notification Law). Retroactive effect, however, is only the first prong of the test. Public Act 89—637 must still be found to fall into one of the categories of prohibited criminal laws. *People v. Pena*, 321 Ill. App. 3d 538, 541 (2001).

The fact that Public Act 89—637 may work to Toia's "disadvantage" does not necessarily implicate *ex post facto* principles. "[T]he focus of the *ex post facto* inquiry is not on whether a legislative change produces some ambiguous sort of 'disadvantage,' *** but on whether any such change alters the definition of criminal conduct or increases the penalty by which a crime is punishable." *California Department of Corrections v. Morales*, 514 U.S. 499, 506 n.3, 131 L. Ed. 2d 588, 595 n.3, 115 S. Ct. 1597, 1602 n.3 (1995); *Fletcher v. Williams*, 179 Ill. 2d 225, 229 (1997). "[I]f a law does not make more burdensome the punishment for a crime after its commission, 'it is of no moment that the law may work to a prisoner's disadvantage.' " *Pena*, 321 Ill. App. 3d at 542, quoting *Barger v. Peters*, 163 Ill. 2d 357, 361-62 (1994). Thus, whether the procedural scheme effected by Public Act 89—637 increased Toia's punishment for his DUI offense or made that punishment more burdensome "turns on the question of whether the provisions of [Public Act 89—637] constitute punishment." *Malchow*, 193 Ill. 2d at 419.

In *Malchow*, our supreme court discussed whether the duty to register under the Registration Act and the reporting requirements of the Notification Law constituted "punishment" within the meaning of the *ex post facto* clauses. *Malchow*, 193 Ill. 2d at 419-24. The court noted that it had previously determined in *People v. Adams*, 144 Ill. 2d 381, 389 (1991), that requiring sex offenders to register under an earlier version of the Registration Act (Habitual Child Sex Offender Registration Act (Ill. Rev. Stat. 1987, ch. 38, pars. 221 through 230)) was not punishment. *Malchow*, 193 Ill. 2d at 419. The court then

stated: "*Adams* does not completely dispose of defendant's argument, however, because the community notification provisions [of the Notification Law] were not in effect at the time of that decision. We thus consider defendant's *ex post facto* argument as it relates to the Notification Law." *Malchow,* 193 Ill. 2d at 419.

While acknowledging the controlling nature of its decision in *Adams* with respect to the Registration Act, the *Malchow* court analyzed the Notification Law under a subsequent decision of the United States Supreme Court:

> "In *Kansas v. Hendricks,* 521 U.S. 346, 138 L. Ed. 2d 501, 117 S. Ct. 2072 (1997), the United States Supreme Court considered whether [the civil commitment provision of] Kansas' Sexually Violent Predator Act constituted punishment. The defendant in that case argued that the Kansas law violated the *ex post facto* clause because it imposed additional punishment for past conduct for which he had already been convicted and forced to serve a prison sentence. The Supreme Court first considered the legislative intent behind the law and held that the Kansas legislature intended to create a civil commitment scheme. *Hendricks,* 521 U.S. at 361, 138 L. Ed. 2d at 515, 117 S. Ct. at 2082. The Supreme Court then examined several factors to determine whether the law had a punitive effect despite its nonpunitive intent, and concluded that it did not. *Hendricks,* 521 U.S. at 362-69, 138 L. Ed. 2d at 515-19, 117 S. Ct. at 2082-85. Subsequently, several states have used the 'intent-effects' test to determine whether sex offender registration and/or notification laws amount to punishment in violation of the *ex post facto* clause. [Citations.]" *Malchow,* 193 Ill. 2d at 419-20.

The United States Supreme Court's "intent-effects" test announced in *Hendricks* and adopted in *Malchow,* delineating the punitive nature of statutory enactments, controls here.

We begin by considering the intent of the legislature in passing Public Act 89—637. As there is no direct statement of intent within the body of Public Act 89—637, we turn to its history in the legislature. The predicate legislation for Public Act 89—637 was Senate Bill 1251 (89th Ill. Gen. Assem., Senate Bill 1251, 1996 Sess.) (S.B. 1251). During debate on S.B. 1251 in the House of Representatives, Representative Moffitt stated:

> "Senate Bill 1251 amends the Unified Code of Corrections. It provides that a defendant charged with [DUI] shall not be eligible to receive an order of supervision if the defendant has previously received an order of supervision for the offense. It also provides that a defendant receiving an order of supervision for [DUI] shall not have his or her records of arrest sealed or expunged. That last

portion was in House Bill 1249[3] that this Chamber passed earlier today by a vote of 111—0—1. *** What we're talking about here is repeat offenders. The issue is direct. Do you want to strengthen the laws dealing with repeat offenders of DUI? In Illinois in 1992 and I think I might even have some more recent figures, but in 1992 there were 1,384 highway deaths in Illinois, 672 of those or 48.5 percent involved alcohol. Why this legislation is needed, is that we do still have a problem. There's more that we can do to combat DUI in Illinois. ***

\* \* \*

*** In the case of DUI we're talking endangerment of the general public, of you, of your family, of my family, everyone out there. We're talking endangerment of other people." 89th Ill. Gen. Assem., House Proceedings, May 24, 1996, at 129-30, 136 (statements of Representative Moffitt).

We find the intent of the legislature in passing Public Act 89—637 to be twofold: promotion of public safety and deterrence of future violations. These goals are nonpunitive in nature. *Hendricks*, 521 U.S. at 361, 138 L. Ed. 2d at 515, 117 S. Ct. at 2082; *Malchow*, 193 Ill. 2d at 419.

■ "Even if the legislature's intent is not to create a punitive scheme, in certain circumstances the legislature's intent will be disregarded where the party challenging the statute demonstrates by 'the clearest proof' that the statute's effect is so punitive that it negates the legislature's intent." *Malchow*, 193 Ill. 2d at 421, quoting *Hendricks*, 521 U.S. at 361, 138 L. Ed. 2d at 515, 117 S. Ct. at 2082.

"Courts have generally looked to the factors enunciated in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 9 L. Ed. 2d 644, 83 S. Ct. 554 (1963), to determine whether a statute has a punitive effect despite its nonpunitive intent. See, *e.g.*, *Hendricks*, 521 U.S. at 362-69, 138 L. Ed. 2d at 515-19, 117 S. Ct. at 2082-85; [citations]. Those factors are: (1) whether the 'sanction' involves an affirmative disability or restraint; (2) whether the sanction has been historically regarded as punishment; (3) whether the sanction comes into play only on a finding of *scienter*; (4) whether operation of the sanction will promote retribution and deterrence; (5) whether the behavior to which the sanction applies is already a crime; (6) whether an alternative purpose to which the sanction may rationally be connected is assignable for it; and (7) whether the sanction appears

---

[3]House Bill 1249 (89th Ill. Gen. Assem., House Bill 1249, 1996 Sess.) contained an identical amendment to section 5 of the Criminal Identification Act. Pub. Act 89—689, eff. December 31, 1996 (amending 20 ILCS 2630/5 (West 1994)).

excessive in relation to the alternative purpose assigned. *Mendoza-Martinez*, 372 U.S. at 168-69, 9 L. Ed. 2d at 661, 83 S. Ct. at 567-68." *Malchow*, 193 Ill. 2d at 421.

These factors when weighed clearly mandate the conclusion that Public Act 89—637's effect is not so punitive that it defeats the legislature's intent. See *Malchow*, 193 Ill. 2d at 421-23 (determining punitive effect of Notification Law).

■ First, the expungement provision places no "affirmative disability or restraint" on DUI offenders: it neither restricts their movements nor limits the scope of their activities. *Malchow*, 193 Ill. 2d at 421. Toia's arrest is a matter of public record. The *Malchow* court determined that dissemination of sex offender registration information " 'does not place new information into the public domain.' " *Malchow*, 193 Ill. 2d at 422, quoting *State v. Pickens*, 558 N.W.2d 396, 399 (Iowa 1997). The mere existence of Toia's arrest record, already a matter within the public domain, cannot be deemed a restraint.

Second, the inability to expunge an arrest record bears little resemblance to such traditional notions of punishment as imprisonment and payment of fines. The existence of an arrest record is a collateral consequence of arrest (*People v. Starnes*, 273 Ill. App. 3d 911, 914 (1995)), not part of the "punishment" imposed for the underlying offense.

The third factor addresses whether the denial of expungement requires a finding of *scienter*. Clearly it does not. The only requirement for the expungement provisions to become effective is the existence of a DUI arrest record as of January 1, 1997. Accordingly, this factor does not indicate a punitive intent. *Malchow*, 193 Ill. 2d at 422.

The fourth factor, whether denial of expungement promotes the traditional punishment goals of retribution and deterrence, partially weighs in Toia's favor. Although the continued existence of an arrest record could hardly be characterized as retribution, we previously concluded that the legislature intended Public Act 89—637 both to promote public safety and to deter subsequent violations. However, "even an obvious deterrent purpose does not necessarily make a law punitive." *Malchow*, 193 Ill. 2d at 423; *Department of Revenue v. Kurth Ranch*, 511 U.S. 767, 780, 128 L. Ed. 2d 767, 779, 114 S. Ct. 1937, 1946 (1994).

The fifth factor is inapplicable. Public Act 89—637 does not criminalize a particular "behavior" or other act. *Malchow*, 193 Ill. 2d at 421.

The sixth factor seeks out "some purpose other than punishment that can rationally be associated with the law." *Malchow*, 193 Ill. 2d at 423. Plainly, the legislature could rationally have found that denying

DUI offenders the opportunity to expunge their arrest records might deter subsequent offenses, thereby promoting public safety.

Finally, we consider whether denying DUI offenders the opportunity to expunge their arrest records is excessive in relation to the goal of promoting public safety. We conclude that it is not. The legislature rationally determined that the high percentage of alcohol-related road fatalities presented a clear threat to public safety. 89th Ill. Gen. Assem., House Proceedings, May 24, 1996, at 129-30, 136 (statements of Representative Moffitt). Denying offenders the opportunity to expunge records of DUI arrests as a means of deterring them from committing subsequent violations is a logical, measured response to such a threat.

Its deterrent nature notwithstanding, "we conclude that [Toia] has not met his burden of showing [by the clearest proof] that [Public Act 89—637] has such a punitive effect that the legislature's intent to create a nonpunitive scheme may be disregarded." *Malchow*, 193 Ill. 2d at 424; *Kansas v. Hendricks*, 521 U.S. 346, 361, 138 L. Ed. 2d 501, 515, 117 S. Ct. 2072, 2082 (1997). "After considering all of the relevant factors, we conclude that the [restrictions imposed by the enactment of Public Act 89—637] are nonpunitive. *** Accordingly, [Toia] has not been subjected to additional punishment for a previously committed offense, and his *ex post facto* claim must therefore fail." *Malchow*, 193 Ill. 2d at 424.

## CONCLUSION

Because we find no *ex post facto* violation in the provisions of Public Act 89—637, the judgment of the trial court denying Toia's petition to expunge his DUI arrest record is affirmed.

Affirmed.[4]

McNULTY and TULLY, JJ., concur.

---

[4]We decline Toia's invitation to adopt the decision of the Court of Appeals of Kansas in *State v. Anderson*, 12 Kan. App. 2d 342, 744 P.2d 143 (1987), which reached the opposite conclusion on substantially similar facts. *Anderson*, 12 Kan. App. 2d at 343-45, 744 P.2d at 145. *Anderson* is not binding on Illinois courts and was decided 10 years prior to *Kansas v. Hendricks*, 521 U.S. 346, 138 L. Ed. 2d 501, 117 S. Ct. 2072 (1997). Further, the *Anderson* court's decision is predicated on a ruling by the Kansas Supreme Court that the mere existence of a criminal record constitutes "punishment" for purposes of *ex post facto* analysis (*State v. Miller*, 214 Kan. 538, 542, 520 P.2d 1248, 1253 (1974)), a ruling this court does not accept. See, *e.g.*, *People v. Starnes*, 273 Ill. App. 3d 911, 914 (1995) (holding that certification as a sex offender does not constitute punishment). See also *State v. Howe*, 308 N.W.2d 743, 748 (N.D. 1981) (ruling that the State's retention of records of valid arrest, even without subsequent conviction, does not violate due process).